Citation Nr: 1434274 
Decision Date: 07/31/14 Archive Date: 08/04/14

DOCKET NO. 09-12 210 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUES

1. Whether new and material evidence has been received to reopen the claim for service connection for skin cancer. 

2. Entitlement to service connection for a skin disorder, to include as due to in-service herbicide exposure.


REPRESENTATION

Appellant represented by: Virginia Department of Veterans Services


ATTORNEY FOR THE BOARD

R. Casadei, Associate Counsel





INTRODUCTION

The Veteran served on active duty from April 1968 to February 1970. 

This matter is before the Board of Veterans' Appeals (Board) on appeal from a January 2008 rating decision of the Philadelphia, Pennsylvania Department of Veterans Affairs (VA) Regional Office (RO). The Veteran's claims file is now in the jurisdiction of the Roanoke RO. 

In his April 2009 VA Form 9 (Substantive Appeal) the Veteran requested a hearing before the Board. In July 2013, he failed (without giving cause) to appear for such hearing on the date it was scheduled. 

In a September 2013 decision, the Board noted that in his March 2007 claim, the Veteran sought service connection for a "skin condition." An unappealed March 1997 rating decision had denied a claim for service connection for skin cancer, and the January 2008 rating decision considered (and denied) the claim as one to reopen a claim of service connection for skin cancer (not addressing other skin disability shown). As the record showed a diagnosis of actinic keratosis (a skin disorder not addressed in the March 1997 rating decision), and the Veteran did not limit the instant claim to reopening the previously denied claim, the instant claim required de novo review (and related development). Consequently, there was a due process violation that requires corrective action and the Board remanded the matter.

In December 2013 the Board again remanded the issue for service connection for a skin disorder, to include as secondary to Agent Orange exposure, in order to obtain a VA examination. This was accomplished, and the claim was readjudicated in a June 2013 supplemental statement of the case. For this reason, the Board concludes that that the Board's remand orders have been substantially complied with, and it may proceed with a decision at this time. See Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall v. West, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (Fed. Cir. 2002).


FINDINGS OF FACT

1. In March 1997, the RO denied service connection for skin cancer, finding that the diagnosed squamous cell carcinoma (SCC) was not a presumptive disease shown to be associated with Agent Orange exposure; the Veteran did not submit a notice of disagreement and no additional evidence was submitted within one year and the decision became final.

2. Evidence received since the March 1997 rating decision relates to an unestablished fact necessary to substantiate the claim for service connection for skin cancer.

3. Symptoms of SCC were not chronic in service and did not manifest to a compensable degree within one year of service separation.

4. Symptoms of SCC have not been continuous since service separation. 

5. The Veteran's SCC is not etiologically related to service, to include in-service herbicide exposure.

6. Actinic keratosis has not been present during the appeal period and was not diagnosed during the most recent VA examination.


CONCLUSIONS OF LAW

1. New and material evidence having been submitted, the criteria to reopen service connection for skin cancer have been met. 38 U.S.C.A. § 5108 (West 2002); 
38 C.F.R. § 3.156 (2013).


2. The criteria for a skin disorder, to include SCC and actinic keratosis have not been met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2002 & Supp. 2013); 
38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309 (2013).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCAA), in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 
38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2002); 
38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2013). Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the claimant and his or her representative of any information, and any medical or lay evidence, not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b).

In Kent v. Nicholson, 20 Vet. App. 1 (2006), the Court held that in a claim to reopen a previously finally denied claim, VCAA notice must notify the claimant of the meaning of new and material evidence and of what evidence and information (1) is necessary to reopen the claim; (2) is necessary to substantiate each element of the underlying service connection claim; and (3) is specifically required to substantiate the element or elements needed for service connection that were found insufficient in the prior final denial on the merits.

The Veteran was advised of VA's duties to notify and assist in the development of the claims in a letter dated September 2007. This letter explained the evidence necessary to substantiate the claims, the evidence VA was responsible for providing, and the evidence the Veteran was responsible for providing. The letter also informed the Veteran of disability rating and effective date criteria and provided notice in accordance with Kent. The Veteran has had ample opportunity to respond and supplement the record.

VA must also make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate the claim for the benefit sought, unless no reasonable possibility exists that such assistance would aid in substantiating the claim. 
38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159(c), (d). Service treatment records, post service private and VA treatment records, and the Veteran's statements are of record. In May 2014, the Veteran was afforded a VA medical examination for his skin disorders. To that end, when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). The Board finds that the VA opinion and findings obtained in this case are adequate. The VA nexus opinion provided considers all the pertinent evidence of record, the Veteran's statements, and provides a complete rationale for the opinion stated. Accordingly, the Board finds the duty to assist satisfied.

Significantly, the Veteran and his representative have not identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of the claims that has not been obtained. Hence, no further notice or assistance to the Veteran is required to fulfill VA's duty to assist in the development of the claims. Smith v. Gober, 14 Vet. App. 227 (2000), aff'd 281 F.3d 1384 (Fed. Cir. 2002); Dela Cruz v. Principi, 15 Vet. App. 143 (2001).

New and Material Evidence

Generally, when a claim is disallowed, it may not be reopened and allowed, and a claim based on the same factual basis may not be considered. 38 U.S.C.A. § 7105. A claim on which there is a final decision may be reopened if new and material evidence is submitted. 38 U.S.C.A. § 5108. "New" evidence means existing evidence not previously submitted to agency decision makers. "Material" evidence means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. New and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. 38 C.F.R. 
§ 3.156(a). 

A March 1997 rating decision denied service connection for skin cancer, finding that the diagnosed SCC was not a presumptive disease shown to be associated with Agent Orange exposure. The Veteran did not submit a notice of disagreement and no additional evidence was submitted within one year and the decision became final.

In support of the current application to reopen service connection for skin cancer, the new evidence of record associated with the claims file since the March 1997 rating decision, includes a May 2014 VA examination reports (requested by the Board in a December 2013 remand in effort to assist in determining whether the Veteran's other skin disorders were related to service). A review of the May 2014 VA medical opinion reveals a detailed discussion of the etiology of the Veteran's SCC. As such, the Board finds that this evidence is new and material. Accordingly, the claim for service connection for skin cancer is reopened. 

Service Connection Laws and Regulations

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C.A. 
§ 1110; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). The condition of SCC (potentially a malignant tumor) is considered a "chronic disease" listed under 38 C.F.R. § 3.309(a); therefore, the presumptive service connection provision of 38 C.F.R. § 3.303(b) apply. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). Actinic keratosis, however, is not considered a chronic disease under 
38 C.F.R. § 3.309(a) will be adjudicated using the general principles of service connection.

Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). The U.S. Court of Appeals for Veterans Claims (Court) has held that "Congress specifically limits entitlement for service-connected disease or injury to cases where such incidents have resulted in a disability. In the absence of proof of a present disability there can be no valid claim." Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992); see also Rabideau v. Derwinski, 2 Vet. App. 141, 143-44 (1992).

In rendering a decision on appeal the Board must analyze the credibility and probative value of the evidence, account for the evidence which it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. Gabrielson v. Brown, 7 Vet. App. 36, 39-40 (1994); Gilbert, 1 Vet. App. at 57. Competency of evidence differs from weight and credibility. Competency is a legal concept determining whether testimony may be heard and considered by the trier of fact, while credibility is a factual determination going to the probative value of the evidence to be made after the evidence has been admitted. Rucker v. Brown, 10 Vet. App. 67, 74 (1997); Layno v. Brown, 6 Vet. App. 465, 469 (1994); see also Cartright v. Derwinski, 2 Vet. App. 24, 25 (1991) ("although interest may affect the credibility of testimony, it does not affect competency to testify").

Generally, the degree of probative value which may be attributed to a medical opinion issued by a VA or private treatment provider takes into account such factors as its thoroughness and degree of detail, and whether there was review of the claims file. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000). Also significant is whether the examining medical provider had a sufficiently clear and well-reasoned rationale, as well as a basis in objective supporting clinical data. See Bloom v. West, 12 Vet. App. 185, 187 (1999); Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998); see also Claiborne v. Nicholson, 19 Vet. App. 181, 186 (2005) (rejecting medical opinions that did not indicate whether the physicians actually examined the veteran, did not provide the extent of any examination, and did not provide any supporting clinical data). The Court has held that a bare conclusion, even one reached by a health care professional, is not probative without a factual predicate in the record. Miller v. West, 11 Vet. App. 345, 348 (1998).

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.

Service Connection for a Skin Disorder

The Veteran alleges that his skin disorders are the result of Agent Orange exposure while in Vietnam. Service personnel records confirm he served in Vietnam from February 1969 to February 1970. Accordingly, he is presumed to have been exposed to, Agent Orange. See 38 C.F.R. § 3.307(a)(6)(iii) (a veteran who served in the Republic of Vietnam during the Vietnam era shall be presumed to have been exposed during such service to an herbicide agent).

Regulations pertaining to Agent Orange exposure, which includes all herbicides used in Vietnam, provide that if a veteran served on active duty in Vietnam during the Vietnam era, the veteran is presumed to have been exposed to Agent Orange or similar herbicides. These regulations also stipulate the diseases, including some types of cancer, for which service connection may be presumed due to an association with exposure to herbicide agents. The only skin condition presumed to be caused by Agent Orange exposure is chloracne, for which the Veteran does not have a current diagnosis. Because the Veteran's SCC and actinic keratosis are not listed among the Agent Orange-related diseases enumerated in 38 C.F.R. § 3.309(e), medical nexus may not be presumed as a matter of law. Notwithstanding the inapplicability of the Agent Orange presumptive service connection regulations, the Board is obligated to fully consider the Veteran's service connection claim on a direct basis. Combee v. Brown, 34 F.3d 1039, 1042 (Fed. Cir. 1994).

The Board finds that the weight of the evidence demonstrates that the Veteran was not diagnosed with SCC or actinic keratosis in service and was not treated for these disorders in service. Specifically, service treatment records are silent for complaints of, treatment for, and diagnosis of any skin disorder. A separation examination (and additional service treatment records) was determined to be unavailable. As such, a skin disorder was not chronic in service. 

As for the Veteran's currently diagnosed SCC disorder, the Board finds that the weight of the evidence demonstrates that the Veteran's SCC did not manifest to a compensable degree within one year of service separation. Here, there are no post-service treatment records documenting SCC or manifestations of such within one year of service separation. The Veteran was diagnosed with SCC in 2004 and a May 2014 VA examination report notes "lesion" for 20 or 30 years (i.e., approximately 1984, 14 years after service separation). See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (lengthy period of absence of medical complaints for condition can be considered as a factor for consideration in deciding a claim). The Veteran also filed his first claim for service connection for skin cancer in October 1996, more than 26 years after service separation. For these reasons, the Board finds that symptoms associated with SCC have not been continuous since service separation.

The Board further finds that the weight of the evidence demonstrates that SCC is not etiologically related to service, to include the in-service herbicide exposure. As noted above, the Veteran was afforded a VA skin examination in May 2014. The examiner reviewed the claims file, discussed the Veteran's medical history, and examined the Veteran's skin. The VA examiner diagnosed SCC. It was further noted that service treatment records were silent for any skin problems other than a callus on his right foot. The Veteran was treated for skin cancer on his left hand in May 2014 and a biopsy report in September 2004 showed squamous cell carcinoma from excision on right hand. The examiner opined that the Veteran's SCC disorder was less likely than not (less than 50 percent probability) incurred in or caused service. In support of this opinion, the examiner reasoned that there was no documentation of any skin problems during active duty other than a callus. Further, current medical research showed no association between Agent Orange exposure and skin cancer. The Board finds the May 2014 VA medical opinion highly probative as the examiner reviewed the claims file, interviewed the Veteran, and provided an opinion supported by a clear rationale. See Prejean, 13 Vet. App. at 448-9.

In regard to actinic keratosis, post-service treatment records show the Veteran was treated for moles of the upper and lower chest wall in February 1979 and VA treatment records show a history of actinic keratosis beginning in May 2000. That notwithstanding, the Veteran was last treated for this disorder in May 2005 where his lesions were treated with liquid nitrogen. A recent VA treatment record (dated in May 2013) notes that the Veteran did not have any lesions, rash, or pruitis of the skin. Further, the May 2014 VA examination report diagnosed SCC, but did not note a diagnosis of actinic keratosis. The Veteran filed his claim for service connection for a skin disorder in March 2007. Importantly, a "current disability" only exists if the diagnosed disability is present at the time the claim is filed or during the pendency of the claim. See McClain v. Nicholson, 21 Vet. App. 319 (2007). The evidence does not demonstrate treatment or a diagnosis for actinic keratosis within the appeal period. 

The Board has also considered the Veteran's statements which purport to relate his skin disorders to service, to include in-service herbicide exposure. As a lay person, the Veteran is competent to report some symptoms associated with his skin disorders (such as lesions), but he does not have the requisite medical knowledge, training, or experience to be able to render a competent medical opinion regarding the cause of the medically complex disorder of SCC and actinic keratosis. See Kahana v. Shinseki, 24 Vet. App. 428, 437 (2011) (recognizing ACL injury is a medically complex disorder that required a medical opinion to diagnose and to relate to service). These skin disorders are medically complex disease process because of their multiple possible etiologies, require specialized knowledge to diagnose, and manifest symptomatology that may overlap with other disorders. Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (holding that rheumatic fever is not a condition capable of lay diagnosis). 

For the reasons stated above, the Board finds that a preponderance of the evidence is against the claim for service connection for a skin disorder, to include as due to in-service herbicide exposure and the claim must be denied. 38 C.F.R. § 3.303. Because the preponderance of the evidence is against the claim, the benefit of the doubt doctrine is not for application. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102.


ORDER

New and material evidence having been received, the claim of entitlement to service connection for skin cancer is reopened. 

Service connection for a skin disorder, to include SCC and actinic keratosis, as due to in-service herbicide exposure is denied.




____________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs