**Jose M. HERNANDEZ-TOYENS,
Appellant,**

v.

**Togo D. WEST, Jr., Secretary of
Veterans Affairs, Appellee.**

No. 97–1054.

United States Court of Veterans Appeals.

Aug. 19, 1998.

Jose M. Hernandez-Toyens, pro se.

Robert E. Coy, Acting General Counsel; Ron Garvin, Assistant General Counsel; Joan E. Moriarty, Deputy Assistant General Counsel; and Monique A.S. Allen, Washington, DC, were on the pleading for appellee.

Before NEBEKER, Chief Judge, and HOLDAWAY and STEINBERG, Judges.

STEINBERG, Judge:

The pro se appellant, veteran Jose M. Hernandez-Toyens, appeals an April 8, 1997, decision of the Board of Veterans' Appeals (Board or BVA) denying as not well grounded his claim for Department of Veterans Affairs (VA) service connection for an acquired psychiatric disorder. Record (R.) at 7, 11. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). The appellant has filed a brief, and the Secretary has filed a motion for affirmance by a single judge. For the reasons that follow, the Court will reverse the decision of the Board and remand the matter for further development and adjudication.

## I. Background

The veteran served in the U.S. Army from March 21 to April 12, 1977. R. at 14. Records from his enlistment examination are silent regarding any psychiatric disorders. R. at 16–21. His service medical records (SMRs) report that he was hospitalized from March 24 to March 28, 1977, after experiencing symptoms of, inter alia, depression and paranoia, and was diagnosed as having inadequate personality. R. at 41–67. Records from his separation examination report a history of inadequate personality. R. at 23–24.

In July 1992, the veteran filed with a VA regional office (RO) a claim for VA service connection for a nervous condition. R. at 71–74. In support, he submitted records from private physicians that report diagnoses of a depressive disorder. R. at 76–77, 81–82. In particular, a November 1992 private medical examination report stated the following:

Diagnosis:
| | |
|---|---|
| Axis I | Schizo[-]affective disorder depressive type |
| Axis II | Paranoid traits |
| Axis III | 1) Low back pain syndrome; 2) Bilateral [illegible]; 3) [illegible]; 4) hemorrhoids |
| Axis IV | 1) Loss of employment; 2) Military Life; 3) Physical condition |
| Axis V | Poor functioning during last year |

R. at 81–82. The veteran underwent a VA medical examination in December 1992, but the diagnosis was deferred due to his failure to report for a requested psychology examination. R. at 87–88. In January 1993, the VARO denied his claim on the ground that the veteran's service medical records "are completely negative for complaints of or treatment for conditions claimed". R. at 98–100. The veteran filed a timely appeal to the Board (R. at 102, 132), and a hearing was held before the RO in January 1994 at which

the veteran testified under oath about his experiences in the Army (R. at 140–49).

Subsequently, the RO obtained outpatient records from a VA medical facility that reported a history of treatment for a nervous disorder. R. at 184–93. In February 1995, the RO again denied the veteran's claim based on an absence of evidence connecting the veteran's psychiatric condition to his period of service. R. at 195–96. In response, the veteran submitted 1989 and 1990 Social Security Administration (SSA) medical records that reported a diagnosis of depressive syndrome. R. at 217–24, 240–52. In October 1995, the RO once more denied his claim on the same ground. R. at 253–55. In the April 8, 1997, BVA decision here on appeal, the Board denied as not well grounded the veteran's claim on the ground of an absence of evidence of a nexus between the veteran's in-service treatment of symptoms of depression and paranoia, diagnosed as inadequate personality, and his current acquired psychiatric disorder. R. at 7, 11.

## II. Analysis

■ Section 5107(a) of title 38, U.S.Code, provides in pertinent part: "[A] person who submits a claim for benefits under a law administered by the Secretary shall have the burden of submitting evidence sufficient to justify a belief by a fair and impartial individual that the claim is well grounded." The Court has defined a well-grounded claim as follows: "[A] plausible claim, one which is meritorious on its own or capable of substantiation. Such a claim need not be conclusive but only possible to satisfy the initial burden of [section 5107(a) ]." *Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990). A well-grounded service-connection claim generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the asserted in-service injury or disease and a current disability. *See Caluza v. Brown,* 7 Vet.App. 498, 506 (1995), *aff'd per curiam,* 78 F.3d 604 (Fed.Cir.1996) (table); *see also Epps v. Gober,* 126 F.3d 1464, 1468 (Fed.Cir.1997) (expressly adopting definition of well-grounded claim set forth in *Caluza, supra* ), *cert. de-*

*nied,* ——— U.S. ———, 118 S.Ct. 2348, 141 L.Ed.2d 718 (1998); *Heuer v. Brown,* 7 Vet. App. 379, 384 (1995) (citing *Grottveit v. Brown,* 5 Vet.App. 91, 93 (1993)); *Brammer v. Derwinski,* 3 Vet.App. 223, 225 (1992) (absent "proof of a present disability[,] there can be no valid claim"); *Rabideau v. Derwinski,* 2 Vet.App. 141, 144 (1992). The credibility of evidence in support of the claim is generally presumed in determining whether a claim is well grounded. *See Robinette v. Brown,* 8 Vet.App. 69, 75–76 (1995); *King v. Brown,* 5 Vet.App. 19, 21 (1993). A Board determination whether a claim is well grounded is subject to de novo review by the Court under 38 U.S.C. § 7261(a)(1). *See Grivois v. Brown,* 6 Vet.App. 136, 139 (1994); *Grottveit, supra.*

■ In the present case, the Court holds, upon de novo review and presuming the credibility of the evidence submitted by the veteran, that the veteran has submitted a well-grounded claim. Records from a VA medical facility and the SSA establish that he currently suffers from a psychiatric condition (R. at 184–93, 217–24, 240–52). *See Epps, Caluza, Brammer,* and *Rabideau,* all *supra.* Moreover, the veteran has proffered evidence that he experienced psychiatric difficulties in service; the in-service hospitalization records reported symptoms of, inter alia, depression and paranoia and that the examining physician had diagnosed him as having inadequate personality (R. at 41–67). *See Epps* and *Caluza,* both *supra.* Finally, as to the question of a nexus between his current condition and service, *see Epps, Caluza,* and *Grottveit,* all *supra,* the November 1992 private medical examination report contains an Axis IV assessment of, inter alia, "Military Life". R. at 81–82. The Diagnostic and Statistical Manual of Mental Disorders, third edition, revised, [hereinafter DSM–III–R], which was in effect at the time of the examination, provides the following:

> Axis IV provides a scale ... for coding the overall severity of a psychosocial stressor or multiple psychosocial stressors that have occurred in the year preceding the current evaluation and that may have contributed to [the development or exacerbation of a mental disorder].... The cur-

rent disorder that is related to the psychosocial stressor may be either a clinical syndrome, coded on Axis I, or an exacerbation of a Personality or Developmental Disorder, coded on Axis II. DSM–III–R 18. The DSM–III–R further directs physicians, in providing an Axis IV assessment, to examine certain delineated substantive areas in order "[t]o *ascertain etiologically significant psychosocial stressors* " and list such factors in the order of their severity. *Id.* at 19 (emphasis added). Thus, by listing the veteran's military experience as part of the Axis IV assessment, the examining physician made a determination that the veteran's period of service was an "etiologically significant psychosocial stressor" contributing to the current acquired psychiatric condition diagnosed under Axis I or the "Paranoid traits" diagnosed under Axis II, regarding "Personality or Developmental Disorder", a condition that generally is not eligible for service connection, *see* 38 C.F.R. §§ 3.303(c), 4.127 (1997); *see also Carpenter v. Brown,* 8 Vet.App. 240, 243 (1995). Consequently, this record provides competent evidence, assuming its credibility, *see Robinette* and *King,* both *supra,* of a possible or plausible connection between the veteran's current condition and the in-service incurrence that he had experienced, and the Court thus holds that the veteran has submitted a well-grounded claim. *See Alemany v. Brown,* 9 Vet.App. 518, 519 (1996) (medical opinion that "stress of the war may have unleashed a process that was dormant and latent and it is possible that he would never in his life [have otherwise] developed convulsions" sufficient to show " 'possible' link between the seizure disorder and the headaches" and to make claim well grounded); *Molloy v. Brown,* 9 Vet.App. 513, 516 (1996) (stating that medical evidence as to nexus to service expressed as "could" suffices for requirement of well-grounded claim); *Watai v. Brown,* 9 Vet.App. 441, 443 (1996) (holding that medical evidence as to nexus to service expressed as "very well might have been", although not "conclusive", suffices to well ground claim); *Robinette,* 8 Vet.App. at 76 ("threshold of plausibility to make a claim well grounded is 'rather low' "; "to be well grounded a claim need not be supported by

evidence sufficient for the claim to be granted"; "the law establishes only a *preliminary* threshold of plausibility with enough of an evidentiary basis to show that the claim is capable of substantiation"); *Lathan v. Brown,* 7 Vet.App. 359, 366 (1995) (distinguishing *Tirpak, infra,* and holding that medical evidence as to nexus expressed as "possible" suffices to well ground claim); *cf. Tirpak v. Derwinski,* 2 Vet.App. 609, 610–11 (1992) (medical evidence as to nexus expressed as "may or may not" not sufficient to well ground claim). The failure of the physician to provide a basis for his opinion goes to the weight or credibility of the evidence in the adjudication on the merits rather than the threshold determination of well groundedness, a stage at which the claimant's evidence is presumed credible, *see Robinette, supra* (quoting *Justus v. Principi,* 3 Vet.App. 510, 513 (1992)); *King, supra.*

The Court notes that the Board, in denying the veteran's claim as not well grounded, determined that the Axis IV notation in the November 1992 record represented an unenhanced recording of the veteran's recitation of his medical history and thus does not constitute competent nexus evidence. R. at 10; *see LeShore v. Brown,* 8 Vet.App. 406, 409 (1995) ("[e]vidence which is simply information recorded by a medical examiner, unenhanced by any additional medical comment by that examiner, does not constitute 'competent medical evidence' satisfying the *Grottveit* requirement"). Contrary to the Board's decision, however, the inclusion of "Military Life" as part of the Axis IV assessment does not represent the examiner's *"bare* transcription of a lay history" as provided by the veteran. *LeShore, supra* (emphasis added). Rather, this notation, albeit conclusory, reflects the medical determination of a competent expert, made after a full evaluation of the veteran, as to the conditions and events relating to the veteran's current condition. *See* DSM–III–R at 19. Consequently, it constitutes competent medical nexus evidence. *See Alemany, Molloy, Watai, Robinette,* and *Lathan,* all *supra.*

### III. Conclusion

Upon consideration of the record on appeal and the pleadings of the parties, the Court

reverses the April 8, 1997, BVA decision and remands the matter for further development and readjudication, consistent with this opinion, and in accordance with all other applicable law and regulation, *see* 38 U.S.C. §§ 1110, 5107(a), (b), 7104(a), (d)(1), including section 302 of the Veterans' Benefits Improvement Act, Pub.L. No. 103–446, § 302, 108 Stat. 4645, 4658 (1994) (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" for claims remanded by BVA or Court); *see Allday v. Brown,* 7 Vet.App. 517, 533–34 (1995). On remand, "the appellant will be free to submit additional evidence and argument" on the remanded claim. *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992). A final decision by the Board following the remand herein ordered will constitute a new decision, that, if adverse, may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new Board final decision is mailed to the appellant.

REVERSED AND REMANDED.