Citation Nr: 1135277
Decision Date: 08/11/11 Archive Date: 09/29/11

DOCKET NO. 06-01 163 ) DATE AUG 11 2011
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Muskogee, Oklahoma


THE ISSUE

Entitlement to service connection for an acquired psychiatric disorder to include schizophrenia and posttraumatic stress disorder (PTSD).


REPRESENTATION

Veteran represented by: The American Legion


ATTORNEY FOR THE BOARD

K. K. Buckley, Associate Counsel






INTRODUCTION

The Veteran served on active duty from August 1985 to December 1985 and from March 10, 1990 to March 31, 1990. He also had a period of National Guard service from May 1982 to September 1982.

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a June 2005 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Muskogee, Oklahoma.

Procedural history

The Veteran filed his initial claim of entitlement to service connection for schizophrenia in October 1996. His claim was denied in a February 1997 rating decision. The Veteran did not appeal that decision. Rating decisions dated September 1997, January 1998, and February 1998 confirmed and continued the RO’s previous denial of service connection for schizophrenia.

In June 1998, the Veteran expanded the claim to include service connection for PTSD. An August 1998 rating decision denied the Veteran’s PTSD claim and declined to reopen the previously denied schizophrenia claim. In July 1999, the Veteran filed to reopen the PTSD claim. An August 1999 rating decision confirmed and continued the previous denial of service connection for PTSD. In an August 2000 rating decision, the RO confirmed and continued the denials as to both claims. An August 2001 rating decision declined to reopen the Veteran’s schizophrenia claim.

In February 2005, the Veteran filed to reopen his previously denied claims of entitlement to service connection for schizophrenia and PTSD. In a June 2005 rating decision, the RO declined to reopen either claim. The Veteran disagreed with the decision and perfected his appeal by filing a timely substantive appeal 
(VA Form 9) in January 2006.

In his January 2006 substantive appeal, the Veteran requested the opportunity to appear at a personal hearing before a Veterans Law Judge. The Veteran withdrew his request for a hearing in a May 2006 statement.

In a December 2009 decision, the Board reopened the Veteran’s claims and remanded the issues for further evidentiary development. The VA Appeals Management Center (AMC) continued to deny the claim in a March 2011 supplemental statement of the case (SSOC). The Veteran’s VA claims folder has been returned to the Board for further appellate proceedings.

The Board notes that the Veteran submitted a statement dated January 2011 in which he appears to express his intent to withdraw a sleepwalking claim. As no such issue is pending on appeal, the Board will proceed.

The issue on appeal is REMANDED to the RO via the Appeals Management Center (AMC), in Washington, DC. VA will notify the Veteran if further action on his part is required.


REMAND

After having carefully considered the matter, and for reasons expressed immediately below, the Board finds that the Veteran’s claim on appeal must be remanded for further development. The Board is cognizant of the fact that the Veteran's case has been in adjudicative status for several years and it has already been remanded in the past. Consequently, the Board wishes to assure the Veteran that it would not be remanding this case again unless it was essential for a full and fair adjudication of his claim.

Reasons for remand

As indicated above, the Veteran served on active military duty from August 1985 to December 1985 and from March 10, 1990 to March 31, 1990. 

Service personnel records show that the Veteran initially enlisted in the Army National Guard in May 1982, but was discharged in September 1982 based on a recommendation by his commanding officer. Notably, the record is unclear as to whether the Veteran’s 1982 service was inactive duty for training (INACDUTRA), active duty for training (ACDUTRA), or active duty. As the resolution of that inquiry is potentially relevant to the pending claims, a determination as to the nature of this service should be made upon Remand. Contemporaneous with this inquiry, VBA should thoroughly inquire as to whether the Veteran’s complete service personnel and treatment records from his entire period of military service, including his confirmed active duty service in 1985 and 1990, have been obtained and associated with the VA claims file.

A general counseling form dated September 1982 indicated that the Veteran had not been able to get along with fellow soldiers and was unable to execute assigned tasks. As indicated above, the Veteran was initially discharged from National Guard service in September 1982. A year later, treatment records from Central State Hospital dated in September 1983 showed that the Veteran voluntarily admitted himself because he was anxious, hearing voices, frightened, and restless. He also admitted to problems with alcohol and mixed drug abuse. Upon discharge from the hospital, he was diagnosed with acute psychosis induced by street drug use.

As stated above, the Veteran reenlisted and had periods of active service from August 1985 to December 1985 and from March 10, 1990 to March 31, 1990. Service treatment records, including the September 1984 re-enlistment physical examination, are absent any diagnosis of or treatment for mental health problems. However, a March 27, 1990 service record shows that the Veteran was involved in an altercation with fellow soldiers. The December 1990 service separation examination did not identify any psychiatric disabilities, but did note a recent history of sleepwalking.

Treatment records from Griffin Memorial Hospital dated in November 1991 and February 1995 documented diagnoses of schizophrenia and chronic polysubstance abuse. An August 1996 treatment record from Oak Crest Hospital noted, “[t]he patient reported he has been experiencing hypnagogic hallucinations since he was eighteen years old, almost on a daily basis, at night and while he was awake.” A diagnosis of psychotic disorder, NOS, was indicated at that time. In records dated July 1997 and October 1997, Dr. H.S.K. stated that the Veteran “feels his mental illness started in the military and someone told him that it was schizophrenia.” In a treatment record dated in June 1998, Dr. J.D.C. indicated that the Veteran “frequently expresses that he has PTSD secondary to military service; however, I have not seen any military records which indicate that he actively served in the war zone; nor have I seen any documentation indicating any trauma suffered while in military service.”

In statements dated January 2008 and October 2008, Dr. J.M.R. indicated that the Veteran’s schizophrenia and depression were “at least in part aggravated by his service in the military.” The October 2008 letter from Dr. J.M.R. also suggested an additional diagnosis of PTSD. Although Dr. J.M.R. stated that the Veteran suffered from PTSD, he made no findings regarding the Veteran’s exposure to a traumatic event. Moreover, the opinions are of little probative value because Dr. J.M.R. provided absolutely no rationale for his conclusions. See Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998) (holding the failure of the physician to provide a basis for his/her opinion goes to the weight and credibility of the evidence).

The Veteran was afforded a VA examination in June 2010 at which time the VA psychologist noted the previous diagnosis of PTSD, but indicated that the Veteran does not meet the DSM-IV criteria for PTSD. The June 2010 examiner diagnosed the Veteran with psychotic disorder, NOS. As to the issue of medical nexus, the examining psychologist explained that “[t]he Veteran’s presentation of psychotic symptoms appeared following his discharge from basic training in 1983. In this examiner’s opinion, it was not incurred or aggravated by his military service. It is also less likely than not that the fight which occurred in service, caused the current psychiatric problems. The Veteran had a prior history of violence and drug abuse.” The examiner then concluded, “[h]owever, the Veteran’s inability to cope with basic training is more likely than not to be a manifestation of his psychiatric diagnosis.” The examiner further opined, “[t]he year following his discharge from service, the Veteran began abusing drugs and having hallucinations which led to his 1983 hospitalization according to the records, the psychosis was induced by drugs. However, over the years his psychotic thinking has persisted in the absence of his drug use.” He concluded, “[i]n this examiner’s opinion, the Veteran’s psychiatric disorder was more likely than not triggered by his drug use. However, his erratic behavior during basic training was as least likely as not to be manifestations of his current psychiatric condition.”

This VA medical opinion appears to be both confusing and contradictory concerning the issue of medical nexus. Moreover, the VA examiner failed to address the Veteran’s September 1984 service enlistment examination, which did not note psychological abnormalities upon his second enlistment. See Nieves-Rodgriguez v. Peake, 22 Vet. App. 295 (2008) (holding that the probative value of a medical opinion comes from when it is the factually accurate, fully articulated, and expresses sound reasoning for the conclusion). The June 2010 VA psychologist’s opinion is therefore of little probative value as to the issue of medical nexus.

There are no other medical opinions of records concerning the issue of medical nexus. This case presents certain medical questions which cannot be answered by the Board. See Colvin v. Derwinski, 1 Vet. App. 171, 175 (1991) (the Board is prohibited from exercising its own independent judgment to resolve medical questions). These questions concern the relationship, if any, between the Veteran’s claimed acquired psychiatric disability and his military service. Another medical opinion is therefore necessary. See Charles v. Principi, 16 Vet. App. 370 (2002); see also 38 C.F.R. § 3.159(c)(4) (2010) (a medical examination or opinion is necessary if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim).

Accordingly, the case is REMANDED for the following action:

1. VBA should contact the Veteran through his representative and request that he identify any outstanding medical examination and treatment records pertinent to his claims. VBA should take appropriate steps to secure any additional medical records identified by the Veteran and associate them with the VA claims folder.

2. VBA should contact the appropriate records custodian(s) to obtain the Veteran’s complete treatment and personnel records from his periods of service with the U.S. Army/National Guard. Inquiry should also be made in order to confirm the exact dates and status of the Veteran’s military service to include the specific periods of ACDUTRA, INACDUTRA, or other service; to include a specific determination as to the status of the Veteran’s military service from May 1982 to September 1982. A copy of the request(s) for these records sent to the appropriate Federal record repository, and any reply, to include any records obtained, should be included in the claims file. If said records cannot be obtained, VBA should provide the Veteran specific notice of the unavailability of these records pursuant to 38 C.F.R. § 3.159(e)(1).

3. After the above-referenced development has been completed, VBA should schedule the Veteran for a VA examination with a psychiatrist to determine the nature and etiology of his claimed acquired psychiatric disorder. Any and all indicated evaluations, studies and tests deemed necessary by the examiner should be accomplished and the claims file should be made available to and be reviewed by the examiner prior to the examination. The VA psychiatrist should address the following questions:

(a). Based upon a review of the record, please indicate the appropriate DSM-IV diagnosis(es) which pertain to the Veteran. If PTSD is diagnosed, the examiner should specifically identify the pertinent stressor event.

(b). Based upon the evidence of record, when did the Veteran initially display symptoms of the diagnosed psychiatric disorder?

 (i). If the examiner finds that the psychiatric disorder was present prior to May 1982, was the disorder clearly and unmistakably aggravated during the period of service from May 1982 to September 1982?

 (ii). If the examiner finds that the psychiatric disorder was present after September 1982, but prior to August 1985, was the disorder clearly and unmistakably aggravated during the period of service from August 1985 to December 1985?

 (iii). If the examiner finds that the psychiatric disorder was present after December 1985, but prior to March 10, 1990, was the disorder clearly and unmistakably aggravated during the period of service from March 10, 1990, to March 31, 1990?

 (iv). If the examiner finds that the psychiatric disorder did not pre-exist his third period of service (March 10, 1990 to March 31, 1990), please indicate whether it is at least as likely as not that the disorder was incurred in or a result of the Veteran’s third period of military service, to include the March 27, 1990, altercation in the Republic of Korea.

The report should be associated with the Veteran’s VA claims folder. The rationale for all opinions expressed by the VA examiner should also be provided. If the examiner is unable to provide an opinion as to one of the questions posed, he should state the reasons therefore.

4. Following any further development that VBA deems necessary, the Veteran’s claim should then be readjudicated. If the benefit sought on appeal remains denied, VBA should provide the Veteran and his representative with a supplemental statement of the case and allow an appropriate period of time for response. The case should then be returned to the Board for further consideration, if otherwise in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. See Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans’ Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2010).




_________________________________________________
John E. Ormond, Jr
Veterans Law Judge, Board of Veterans’ Appeals

Under 38 U.S.C.A. § 7252 (West 2002), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2010).