Citation Nr: 1528195 
Decision Date: 06/30/15 Archive Date: 07/09/15

DOCKET NO. 13-29 651 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUES

1. Entitlement to service connection for residuals of a perforated ear drum 

2. Entitlement to service connection for a bilateral foot condition. 

3. Entitlement to service connection for pseudofolliculitis barbae.

4. Entitlement to service connection for tinnitus. 

5. Entitlement to service connection for a heart disability. 


REPRESENTATION

Appellant represented by: Disabled American Veterans




WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

Devon Rembert-Carroll, Associate Counsel


INTRODUCTION

The Veteran had active service from October 1981 to May 1982 with subsequent Reserve service. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an April 2012 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Roanoke, Virginia.

The Veteran testified at a Board Central Office Hearing in July 2014 and a copy of that transcript is of record.

In a December 2014 decision, the Board remanded the claims for further development. 

The Board notes that the Veteran submitted additional evidence after the last adjudication by the AOJ. As the substantive appeal for all issues on appeal was received after February 2, 2013, he is presumed to have waived AOJ review of such evidence. 38 U.S.C.A. § 7105 (as amended, effective February 2, 2013). There is also no written request for review by the AOJ. Id.

This case was processed using the Veterans Benefits Management System (VBMS). A review of the Veteran's Virtual VA claims file reveals the July 2014 Board hearing transcript. 
The issue of entitlement to service connection for bilateral hearing loss has been raised by the record in a February 2015 statement, but has not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over it, and it is referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2014).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDINGS OF FACT

1. The probative evidence of record shows that the Veteran did not suffer a perforated ear drum in service and does not have a current diagnosis of residuals of a perforated ear drum. 

2. The probative evidence of record shows that the Veteran did not have a bilateral foot condition in service and does not have a current diagnosis of a bilateral foot condition. 

3. The probative evidence of record shows that the Veteran did not have pseudofolliculitis barbae in service and does not have a current diagnosis of pseudofolliculitis barbae.

4. The probative evidence of record shows that the Veteran's tinnitus did not manifest during, or as a result of military service. 

5. The probative evidence of record shows that the Veteran's heart disability clear and unmistakably preexisted service and clearly and unmistakably was not aggravated by service.




CONCLUSIONS OF LAW

1. The criteria for service connection for residuals of a perforated ear drum are not met. 38 U.S.C.A. §§ 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2014).

2. The criteria for service connection for a bilateral foot condition are not met. 38 U.S.C.A. §§ 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2014).

3. The criteria for service connection for pseudofolliculitis barbae are not met. 38 U.S.C.A. §§ 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303 (2014).

4. The criteria for service connection for tinnitus are not met. 38 U.S.C.A. §§ 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309 (2014).

5. The criteria for service connection for a heart disability are not met. 38 U.S.C.A. §§ 1111, 1112, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.304 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

VA has a duty to notify and assist the Veteran in substantiating his claims for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2014). Here, the notice requirements were accomplished by a letter sent in March 2012, prior to the initial rating decision. The letter also included notice of the type of evidence necessary to establish a disability rating or effective date for the issues under consideration, pursuant to the holding in Dingess/Hartman v. Nicholson, 19 Vet App 473 (2006). 

VA also has a duty to assist the Veteran in the development of a claim. This duty includes assisting the Veteran in the procurement of service treatment records and pertinent post-service treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159 (2014). Here, the Veteran's service treatment records, military personnel records and post-service VA treatment records have been associated with the claims file. Additionally, the Veteran has not identified any outstanding records that have not been requested or obtained. 

The Veteran was afforded a VA examination for his claimed heart disability in July 2013. The Board finds the VA examination report is adequate because it is based on the Veteran's medical history, review of the claims file, and supported by a rationale based on sound medical principles. See Nieves-Rodriquez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). 

The Board notes that the Veteran has not been provided a VA examination in regards to his claimed conditions of residuals of a perforated ear drum, bilateral foot condition, pseudofolliculitis barbae, and tinnitus. However, a VA examination is not needed in every case. In McLendon v. Nicholson the Court held that the Secretary must provide a VA medical examination when there is (1) competent evidence of a current disability or persistent or recurrent symptoms of a disability, (2) evidence establishing that an event, injury, or disease occurred in service, or establishing certain diseases manifesting during an applicable presumptive period for which the claimant qualifies, and (3) an indication that the disability or persistent or recurrent symptoms of a disability may be associated with the veteran's service or with another service-connected disability, but (4) there is insufficient competent medical evidence on file for the Secretary to make a decision on the claim. McLendon v. Nicholson, 20 Vet. App. 79 (2006); see also 38 U.S.C.A. § 5103A (d)(2), 38 C.F.R. § 3.159(c)(4)(i). The third prong, which requires that the evidence of record "indicate" that the claimed disability or symptoms "may be" associated with the established event, is a low threshold. Id. at 83.

In regards to the Veteran's claimed residuals of a perforated ear drum and bilateral foot condition, there is no medical evidence or credible lay evidence of an in-service event. In the absence of evidence of an in-service event, there is no reasonable possibility that a medical nexus opinion can substantiate the claim. In regard to the claimed tinnitus, there is no medical evidence or credible lay evidence of continuity of symptoms from in service and ever since service. Thus, there is no reasonable possibility that a medical nexus opinion can substantiate the claim. In regard to the claimed pseudofolliculitis barbae, there is no medical evidence or credible lay evidence of continuity of symptoms from in service and ever since service. Thus, there is no reasonable possibility that a medical nexus opinion can substantiate the claim. For these reasons, the Board finds that there is no duty to obtain medical examinations and nexus opinions on the claimed disabilities. 

As previously noted, the Veteran was provided an opportunity to set forth his contentions during a hearing before the undersigned in July 2014. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. § 3.103(c)(2) requires that a "hearing officer" who chairs a hearing to fulfill two duties: (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, the undersigned specifically noted the issues on appeal, informed the Veteran why his claims were denied and what evidence was needed to substantiate those claims. As such, the Board finds that the undersigned complied with the aforementioned hearing duties.

Additionally, the Board finds that the RO has substantially complied with the December 2014 remand directives which included requesting outstanding service treatment records and military personnel records. Stegall v. West, 11 Vet. App. 268 (1998). 

The Board thus finds that all necessary development has been accomplished and appellate review may proceed. See Bernard v. Brown, 4 Vet. App. 384 (1993).
 
General Legal Criteria

Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1131. Establishing service connection requires (1) evidence of a current disability; (2) evidence of in-service incurrence or aggravation of a disease or injury; and (3) evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

Service connection may also be granted for chronic disabilities if such are shown to have been manifested to a compensable degree within one year after the Veteran was separated from service. 38 U.S.C.A. §§ 1101, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. As an alternative to the nexus requirement, service connection for these chronic disabilities may also be established through a showing of continuity of symptomatology since service. 38 C.F.R. § 3.303(b). The option of establishing service connection through a demonstration of continuity of symptomatology rather than through a finding of nexus is specifically limited to the chronic disabilities listed in 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Analysis

Residuals of a Perforated Ear Drum and Bilateral Foot Condition

The Veteran contends that the June 1982 report of medical examination shows damage to the eardrum, the examiner did not explain the specifics to him, and that his perforated ear drum happened during his time on the rifle and grenade ranges. The Veteran also contends that he has a hammer toe that began in-service. The Veteran also asserts that he began having corns and calluses in-service that never went away. The Veteran reported that he would periodically go to sick call and would have them cut off. See January 2012 Veteran statement; January 2014 Board Hearing transcript; see also February 2015 Veteran statement. 

Turning to the evidence of record, a January 1982 air traffic control candidate report of medical examination shows the Veteran's ears were noted as normal. The Veteran's ear drums were also noted as normal with a notation of "Valsalva WNL". The Veteran's feet and lower extremities were noted as normal. 

A February 1984 Reserve Triennial report of medical examination shows that the Veteran's ears and ear drums were noted as normal. The Veteran's feet and lower extremities were also noted as normal. A February 1984 Triennial report of medical history shows that the Veteran denied ear nose or throat trouble and hearing loss. The Veteran also denied foot trouble. 

Post-service VA treatment records dated January 2012 to January 2015 show that in October 2014, the Veteran reported that he had a perforated ear drum in service. 
The records are otherwise absent of any complaints, treatment, or diagnosis of residuals of a perforated ear drum or any bilateral foot condition. 

Based on the above, the Board finds that the most probative evidence of record is against a finding that the Veteran had a perforated ear drum, residuals of a perforated ear drum, or a bilateral foot condition in service. Moreover, there is no medical evidence of a current disability. 

The Board acknowledges the Veteran and his representative's assertions that the January 1982 medical examination is evidence of an in-service perforated ear drum. However, the Board notes that a "Valsalva", or a Valsalva maneuver, is defined as the forcible exhalation effort against occluded nostrils and a closed mouth which causes increased pressure in the eustachian tube and middle ear so that the tympanic membrane moves out; formerly used as a test of eustachian tube patency. See DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 429 (32nd ed. 2012). Crucially, the January 1982 examination found the Veteran's ear drums to be normal and did not provide any diagnosis regarding the Veteran's ears. As such, the Board assigns no probative value to the Veteran and his representative's assertions that the January 1982 service treatment record is evidence of an in-service perforated ear drum because the current description of the in-service event is inconsistent with the evidence contemporaneous to service. The evidence contemporaneous to service showing the state of the Veteran's medical condition is more reliable given its close proximity to service. In the absence of credible evidence of an inservice event, no credible link can be established between a current disability and service. 

The Board also acknowledges the Veteran's assertions that he currently has residuals of a perforated ear drum or a bilateral foot condition due to service. Although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issue in this case, the diagnosis and etiology of a perforated ear drum, residuals of a perforated ear drum, and a chronic bilateral foot condition, falls outside the realm of common knowledge of a lay person. In this regard, while the Veteran can competently report his symptoms, any opinion regarding whether he has currently diagnosed disabilities etiologically related to service requires medical expertise that the Veteran has not demonstrated. See Jandreau v. Nicholson, 492 F. 3d 1372, 1376 (2007). A perforated ear drum and a bilateral foot condition may be due to many causes thereby rendering the nexus question medically complex requiring medical expertise to resolve. As such, the Board assigns no probative value to the Veteran's assertions that he has a currently diagnosed perforated ear drum, residuals of a perforated ear drum, an a bilateral foot condition related to service. 

Instead, the Board finds the complete absence of complaints, treatment, or diagnosis of a perforated ear drum, residuals of a perforated ear drum, or any notation of bilateral foot condition in both the in-service and post-service medical records to be highly probative to the issues at hand. 

In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

Pseudofolliculitis Barbae

The Veteran asserts that he developed a severe facial rash as a result of shaving every day which could be clearly seen on his military identification card, and that it still bothers him so he never shaves. See January 2012 Veteran statement and January 2014 Board hearing transcript. 

A January 1982 air traffic control candidate report of medical examination shows that the Veteran's skin was noted as normal.

A September 1983 Reserve service treatment record shows that the Veteran was noted as having a history of "pseudo barbae foll". The examiner noted that the Veteran needed to leave some hair shaft exposed to prevent hair shaft infections. The examiner noted that he only needed 4/16 of an inch under his chin. A February 1984 Reserve Triennial report of medical examination shows that the Veteran's skin was noted as normal. A February 1984 Triennial report of medical history shows that the Veteran denied skin diseases. 

Post-service VA treatment records dated January 2012 to January 2015 are absent of any complaints, treatment, or diagnosis of a skin condition. A March 2014 treatment record shows the Veteran's skin was noted as "no rashes". 

Based on the above, the Board finds that the most probative evidence of record is against a finding that the Veteran had pseudofolliculitis barbae during active duty service or has a current diagnosis of pseudofolliculitis barbae. There is no medical evidence of the condition during active duty service, and there is a complete absence of complaints, treatment, or diagnosis of pseudofolliculitis barbae after 1983. The evidence contemporaneous to service showing the state of the Veteran's medical condition is more reliable given its close proximity to service. Thus, the Board finds that there is no medical evidence or credible lay evidence of an in-service event. In the absence of evidence of an inservice event, no credible link can be established between a current disability and service. 

In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. 49, 53-56 (1990).

Tinnitus

The Veteran contends that he has tinnitus that may be due to his perforated ear drum and or exposure to rifles, grenades, and planes during his military service. See January 2012 Veteran Statement. The Veteran specifically stated that his warehouse was maybe 100 yards from the flight line, he was not provided hearing protection, and at the end of the day he would notice people needed to talk louder for him to hear but after a couple of hours it would get normal again. See July 2014 Board hearing transcript. The Veteran also noted that he began experiencing ringing in his ears which continued after service. Id. 

Turning to the evidence of record, the Veteran has a current diagnosis of tinnitus as evidenced by an October 2014 VA treatment record and his lay statements. See Charles v. Principi, 16 Vet. App. 370, 374 (2002). 

In regards to an in-service incident or event, as discussed above, the Board has found that the most probative evidence of record is against a finding that the Veteran suffered a perforated ear drum during military service. However, the Veteran's military personnel records show that his primary duty was listed as base supply administrative clerk and warehouseman. The Board finds that noise exposure at rifle and grenade ranges is consistent with the places, types, and circumstances of the Veteran's military service. See 38 U.S.C.A. § 1154(a). 

However, the Board finds that the evidence of record is against a finding that the Veteran's tinnitus is related to his military service. The only evidence that the Veteran's tinnitus is related to his military service is the Veteran's own lay statements. In regards to continuity of symptoms and presumptive service connection, the Board finds that the Veteran's tinnitus is properly afforded such consideration, as it is one of the enumerated conditions under 38 C.F.R. § 3.309(a). Walker, 708 F.3d 1331. The Board acknowledges the Veteran's current reports that he has ringing in his ears since service. However, the Veteran's service treatment records are absent of any complaints, treatment, or diagnosis of tinnitus. Instead, the Veteran's ears were noted as normal on January 1982, and February 1984 reports of medical examinations. Additionally, on a February 1984 report of medical history, the Veteran denied ear, nose or throat trouble and hearing loss. VA treatment records dated January 2012 to June 2013 are absent of any complaints, treatment, or diagnosis of tinnitus. An October 2014 VA treatment record shows that the Veteran reported he could not sleep due to ringing in his ears that had been ongoing for years, with recent worsening. Another October 2014 treatment record shows that the Veteran was seen for constant ringing in his ears. As such, the Board finds that there is no clinical evidence that the Veteran complained of tinnitus until his October 2011 claim, 29 years after separation from service. 

While the Board acknowledges that the absence of any corroborating medical evidence supporting assertions, in and of itself, does not render lay statements incredible, such absence is for consideration in determining credibility. See Buchanan v. Nicholson, 451 F.3d 1331, 1336 (Fed. Cir. 2006) (noting that the absence of contemporaneous medical documentation may go to the credibility and weight of Veteran's lay testimony, but the lack of such evidence does not, in and of itself, render the lay testimony incredible). The Board also notes that the lapse of time between service separation and the earliest documentation of current disability is a factor for consideration in deciding a service connection claim. See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 2000). The Veteran's current statements, made in connection with his pending claim for VA benefits, that he has experienced tinnitus since service are inconsistent with the contemporaneous evidence that shows the Veteran specifically denied problems with his ears, nose, and throat, and hearing loss within two years of separation from service. The evidence contemporaneous to service showing the state of the Veteran's medical condition is more reliable given its close proximity to service. The credibility of assertions of tinnitus is crucial given the subjective nature of the disability. Therefore, unfortunately, the Board cannot find that the record contains credible lay evidence of continuity of symptoms. For these same reasons, there is no credible evidence that the Veteran's tinnitus manifested to a compensable degree within one year of the Veteran's discharge from service. See 38 C.F.R. § 3.307(a), 3.309(a). Instead, the probative evidence of record shows that the Veteran did not complain of tinnitus until many years after service. 

As such, based on the above, the Board finds that the weight of the evidence is against a finding of service connection for the Veteran's tinnitus. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claims, that doctrine is not applicable. 38 C.F.R. § 3.102 (2013), Gilbert, supra.




Heart Disability

The Veteran contends that his claimed heart condition was aggravated by his military service, specifically the strenuous training. The Veteran also asserts that the increase from a Grade I/VI heart murmur at enlistment to a grade III/VI heart murmur during service and the diagnosis of an atrial septal defect during service are evidence of aggravation. The Veteran also reported that the diagnosis of an atrial septal defect usually occurs around 40 years of age and he was only 26 when he was diagnosed, which is also evidence of aggravation. See January 2012 statement; July 2014 Board hearing transcript and February 2015 Veteran statement. 

Turning to the evidence of record, the Veteran has a current diagnosis of a heart disability as evidence by the July 2013 VA examination that diagnosed atrial septal defect. 

In regards to the Veteran's military service, a veteran will be considered to have been in sound condition when examined and accepted for service, except as to disorders noted on entrance into service, or when clear and unmistakable evidence demonstrates that the disability existed prior to service and was not aggravated by service. Only such conditions as are recorded in examination reports are to be considered as noted. 38 U.S.C.A. § 1111 (West 2014); 38 C.F.R. § 3.304(b). Here, the June 1981 enlistment report of medical examination shows that a cardio consultation revealed negative findings and the Veteran was found qualified. Under summary of defects and diagnoses, heart murmur was crossed out and replaced by an illegible notation. 

Additionally, the Board notes that diseases (but not defects) of congenital, development or familial (hereditary in) origin may be recognized as service-connected if the evidence as a whole establishes that the familial conditions in question were incurred in or aggravated during service within the meaning of VA regulations. VAOPGCPREC 82-90. In other words, if the evidence as a whole establishes that a disease (but not a defect) of congenital, developmental or familial (hereditary in) origin was first manifested during service, or pre-existed service and progressed at an abnormally high rate during service, then service connection may be granted for such a disease. See, e.g., VAOPGCPREC 82-90 (July 18, 1990); VAOPGCPREC 67-90 (July 18, 1990); VAOPGCPREC 1-90 (March 16, 1990). In turn, defects of congenital, development or familial (hereditary in) origin may not be service-connected, because they are not diseases or injuries under the law. 38 C.F.R. § 3.303(c) (2014). However, many such defects can be subject to superimposed disease or injury. If, during service, superimposed disease or injury does occur, service connection may be warranted for the resultant disability. VAOPGCPREC 82-90.

A July 1981 service cardiology consult shows that the Veteran reported that he had been asymptomatic from a cardiovascular standpoint. The Veteran reported that he was active in athletics in high school. The Veteran also reported that he worked out with weights and lifted 150 to 180 pounds on the bench press. The Veteran also reported that he had jogged one to two miles previously with no difficult. The Veteran denied taking medication. The Veteran reported that a heart murmur was noted at four years of age and he was re-evaluated at Walter Reed when he was 16 to 17 years old and was found to be "ok" with no restrictions. The examiner noted that he had no follow-ups of heart disease. The examiner noted that the Veteran's electrocardiogram (EKG) and chest x-rays were normal. The examiner noted clear COR (coronary) S1 and S2 splits normally Grade I/VI. The examiner noted a normal cardiovascular examination. The examiner also noted a murmur. The examiner concluded that the Veteran was fit for full duty. 

A January 1982 treatment record shows that the Veteran was treated for a Grade II systolic murmur heart beat at the aortic area. The provisional diagnosis was a Grade II/VI systolic murmur. The examiner noted a fixed splitting of S2 Grade III/VI systolic murmur at the second "LICS". The examiner noted that the Veteran's heart size was within normal limits. The examiner diagnosed atrial septal defect and recommended an EKG. The EKG revealed a mitral valve prolapse and an atrial septal defect. A chest x-ray revealed a generalized enlargement of the heart. The examiner diagnosed generalized cardiomegaly. A January 1982 air traffic control candidate report of medical examination shows that the Veteran was noted as having a Grade II/VI S1 heart murmur at the aortic level and was found fit for duty. 

A February 1982 treatment record shows that the Veteran was referred to internal medicine for evaluation of an asymptomatic cardiac murmur. The Veteran was noted as able to perform PFTs (pulmonary function test) and other strenuous activity without difficult. The examiner noted that physical examination was strongly suggestive of atrial septal defect as a precordial thrill was present together with fixed splitting of S2 associated with a crescendo-decrescendo systolic murmur. No midsystolic clicks were heard. The examiner noted that the Veteran was referred for an echocardiogram to confirm the diagnosis. Both 2D and M-mode echocardiograms were performed. A 1.0 centimeter atrial septal defect was confirmed. An unsuspected mitral valve prolapse was also detected. The examiner diagnosed an atrial defect and a mitral valve prolapse. The Veteran was found fit for full duty and it was SBE (subacute bacterial endocarditis) prophylaxis before dental work or other surgery was recommended. The examiner also noted that no other medications or precautions were needed. 

A February 1984 Reserve Triennial report of medical examination shows that the Veteran was noted as having a functional systolic murmur under defects and diagnoses. A February 1984 Triennial report of medical history shows that the Veteran denied shortness of breath, pain or pressure in the chest, palpitation or pounding heart, and heart trouble. 

Post-service VA treatment records dated January 2012 to January 2015 show that the Veteran's problems list includes heart murmurs. A June 2012 treatment record shows that the Veteran had a history of heart valve concerns and "heart murmur and vavle prolapse".

The Veteran was afforded a heart VA examination in July 2013. The examiner diagnosed an atrial septal defect. The examiner noted that as a child the Veteran was told that he had a murmur. The examiner stated that it was noted again during his aviation physical examination in Memphis, Tennessee. The examiner noted that the Veteran was sent to a cardiologist who ordered an echocardiogram which revealed that the Veteran had an atrial septal defect and mitral valve prolapse. The examiner also noted that the Veteran had a recent echocardiogram that revealed no evidence of a mitral valve prolapse. The examiner concluded that the claimed condition which clearly and unmistakably existed prior to service was clearly and unmistakably not aggravated beyond its natural progression by an in-service injury event or illness. The examiner explained that atrial septal defect is a form of congenital heart defect that enables blood flow between two compartments of the heart called the left and right atria. The examiner also explained that as a group, atrial septal defects are detected in one child per 1500 live births. The examiner explained that atrial septal defects make up 30 to 40 percent of all congenital heart diseases that are seen in adults. The examiner concluded that the Veteran was born with the atrial septal defect and thus this condition predated his military service. The examiner further concluded that there was no disease, injury, or event that occurred during his military service that could have aggravated his heart condition beyond its natural progression. 

The Board notes that the probative value of medical opinion evidence is based on the medical expert's personal examination of the patient, his knowledge and skill in analyzing the data, and his medical conclusion. As is true with any piece of evidence, the credibility and weight to be attached to these opinions are within the province of the adjudicator. Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993). Whether a physician provides a basis for his or her medical opinion goes to the weight or credibility of the evidence in the adjudication of the merits. See Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998). Other factors for assessing the probative value of a medical opinion are the physician's access to the claims folder and the thoroughness and detail of the opinion. See Nieves-Rodriguez, 22 Vet. App. 295 (2008); Prejean v. West, 13 Vet. App. 444, 448-9 (2000). 

Here, the Board finds the July 2013 VA examination, to be highly probative to the issue at hand. The July 2013 opinion was provided by a staff physician in the VA Cardiology Department who possesses the necessary education, training, and expertise to provide the requested opinion. Additionally, the conclusions are shown to have been based upon a review of the Veteran's claims file and acknowledgement of the Veteran's reported lay history. The VA examiner also provided a detailed explanation of the nature of the Veteran's currently diagnosed heart disability, concluded it was the only current heart disability, and applied a heightened standard. The examiner's conclusions are also consistent with the evidence of record which reveals lay and medical evidence that the Veteran's heart disability preexisted service and that the Veteran was found fit for duty during active and reserve service. Furthermore, there are no competing medical opinions of record. The Board thus finds that the July 2013 VA medical opinion is dispositive of the question of whether the Veteran's heart disability clearly and unmistakably preexisted service and clearly and unmistakably was not aggravated by service. The July 2013 opinion also shows the Veteran's disability is a defect and the overall evidence of record demonstrates that the defect was not subject to a superimposed disability. 

The Board acknowledges the Veteran's contentions that his currently diagnosed heart disability was aggravated by service or is otherwise related to service. Again, although lay persons are competent to provide opinions on some medical issues, see Kahana v. Shinseki, 24 Vet. App. 428, 435 (2011), as to the specific issue in this case, determining the nature and etiology an atrial septal defect, falls outside the realm of common knowledge of a lay person. In this regard, while the Veteran can competently report his symptoms, any opinion regarding whether his currently diagnosed heart disability was aggravated by service or is otherwise related to service, must be provided by a medical expert because the nexus question presented here involves a medical subject concerning an internal physical process extending beyond an immediately observable cause-and-effect relationship . See Jandreau v. Nicholson, 492 F. 3d 1372, 1376 (2007). As such, the Board cannot assign probative weight to the Veteran's assertions to the extent that they may be construed as an opinion regarding aggravation. Given all of the above, the Board finds service connection for the Veteran's currently diagnosed heart disability is not warranted. 


ORDER

Entitlement to service connection for residuals of a perforated ear drum is denied. 

Entitlement to service connection for a bilateral foot disability is denied. 

Entitlement to service connection for pseudofolliculitis barbae is denied. 

Entitlement to service connection for tinnitus is denied.

Entitlement to service connection for a heart disability is denied. 



______________________________________________
TANYA SMITH
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs