﻿Citation Nr: AXXXXXXXX
Decision Date: 04/30/21 Archive Date: 04/30/21

DOCKET NO. 210416-154143
DATE: April 30, 2021

ORDER

Entitlement to service connection for Meniere's disease is granted.

FINDING OF FACT

Meniere’s disease onset in service.

CONCLUSION OF LAW

The criteria for entitlement to service connection for Meniere's disease have been met. 38 U.S.C. § 1101 (2012); 38 C.F.R. §§ 3.102, 3.303 (2020).

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from August 1961 to April 1965.

The rating decision on appeal was issued in March 2021 and constitutes an initial decision; therefore, the modernized review system, also known as the Appeals Modernization Act (AMA), applies. 

In the April 2021 VA Form 10182, Decision Review Request: Board Appeal (Notice of Disagreement) (NOD), the Veteran elected the Direct Review of the March 2021 decision therefore, the Board may only consider the evidence of record at the time of the March 2021 agency of original jurisdiction (AOJ) decision on appeal. 38 C.F.R. § 20.301.

In the March 2021 rating decision, the AOJ determined that new and relevant evidence had been received to readjudicate the claim for service connection for Meniere’s disease. This is a favorable finding by the AOJ and the Board will proceed to the address the claim on the merits. See 38 U.S.C. § 5104A; 38 C.F.R. § 3.104(c).

1. Entitlement to service connection for Meniere's disease

The Veteran contends that he is entitled to service connection for Meniere’s disease, as he believes that this disorder began in service and is related to his service-connected hearing loss and tinnitus.

Service connection will be granted if the evidence demonstrates that a current disability resulted from an injury or disease incurred in or aggravated by active service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). Establishing service connection generally requires competent evidence of three things: (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship, i.e., a nexus, between the claimed in-service disease or injury and the current disability. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2009); 38 C.F.R. § 3.303(a).

With chronic disease shown as such in service (or within the presumptive period under § 3.307), so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. 38 C.F.R. § 3.303(b). To show a chronic disease in service, a combination of manifestations sufficient to identify the disease entity is required, as is sufficient observation to establish chronicity at the time. 38 C.F.R. § 3.303(b). The Court has established that 38 C.F.R. § 3.303(b), applies to only those chronic diseases listed in 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013); 38 U.S.C. § 1101. With respect to the current appeal, that list includes other organic diseases of the nervous system. See 38 C.F.R. § 3.309(a).

Service connection may also be granted for a disease first diagnosed after discharge when all of the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

In addition, for Veterans who have served 90 days or more of active service during a war period or after December 31, 1946, certain chronic disabilities, including organic diseases of the nervous system, are presumed to have been incurred in service if they manifested to a compensable degree within one year of separation from service. 38 U.S.C. §§ 1101, 1112, 1113; 38 C.F.R. §§ 3.307(a), 3.309(a). However, in order for the presumption to apply, the evidence must indicate that the disability became manifest to a compensable (10 percent) degree within one year of separation from service. See 38 C.F.R. § 3.307.

In determining whether service connection is warranted for a disability, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the claimant prevailing in either event, or whether a preponderance of the evidence is against the claim, in which case the claim is denied. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

The Veteran’s service treatment records reflect assessment of left serous otitis media in December 1962. There are otherwise no complaints, treatment, or diagnoses with respect to the ear, vestibular system, or Meniere’s disease.

On VA audiology examination in February 2019, the Veteran reported onset of tinnitus in service.

A November 2019 VA audiology note indicates the audiologist’s assessment that the Veteran’s audiogram configuration was not consistent with hearing loss in typical cases of Meniere’s disease.

A December 2019 VA otolaryngology note reflect that the Veteran complaint of dizziness for over 20 years and constant, bothersome tinnitus after working on the flight line in the military. He was assessed with probable Meniere’s disease and his dizziness/vertigo was thought to be likely multifactorial.

On VA contract examination in October 2020, the Veteran reported experienced dizziness and ringing in the ears in 1968, post-service. He sought medical attention and underwent testing, but nothing was done at that time.

The examiner diagnosed Meniere’s disease. The examiner opined that the Veteran’s Meniere’s disease was less likely than not proximately due to or the result of the Veteran’s service-connected tinnitus. In so finding, the examiner noted that the two disabilities were not medically related. A thorough review of medical literature failed to establish a causal relationship, though it did support that tinnitus is a symptom of Meniere’s disease.

The examiner also opined that the Veteran’s Meniere’s disease was less likely than not incurred in or caused by service. In so finding, the examiner observed that service treatment records, as well as subsequent VA treatment records and a 1982 VA examination, were silent for diagnosis, with the possibility of Meniere’s not noted until 2019. Moreover, the Veteran’s service-connected hearing loss and tinnitus were found to be due to military noise exposure per exams conducted in 2019 and 2020. The November 2019 report notated that the configuration of the Veteran’s audiogram is not consistent with hearing loss in typical cases of Meniere’s disease.

A December 2020 opinion report from Dr. A. reflects that she interviewed the Veteran and review the November 2020 rating decision that initially denied his claim. She indicated that based on this review, the Veteran had been suffering from classic symptoms of Meniere’s disease (tinnitus, hearing loss, aural fullness, and vertigo) since his military service. The Veteran reported that his symptoms were mild in service and he did not feel comfortable seeking medical attention because he felt that they would resolve with time. He ignored the symptoms until he fell in 2019. The Veteran described acute exacerbations which started off as a shrill noise with a sensation of fullness in the left ear and associated pressure, dizziness, and vertigo to the point where he needed to lay down because his coordination was impaired. He recalled having similar episodes in the 1960s, but the attacks had become more frequent and severe.

Dr. A. indicated that medical literature review revealed that Meniere’s disease typically began between the ages of 20 and 40 years, which is consistent with the Veteran’s onset of symptoms in service when hew as in his 20s. She noted that the timing of the Veteran’s symptoms and decision not to seek medical attention was supported by literature, which indicated that most patient tended to cycle from active symptoms to prolonged remissions.

In conclusion, Dr. A. indicated that it was her professional medical opinion that the Veteran’s Meniere’s disease is the underlying condition responsible for the manifestation of hearing loss and tinnitus, which is already service-connected. She found the conditions to be inextricably intertwined and that the Veteran’s Meniere’s disease subsumed his hearing loss and tinnitus.

A March 2021 VA opinion reflects review of the records, after which the examiner determined that the Veteran’s Meniere’s disease was less likely than not caused by or a result of service. He noted that his opinion was based on review of the claim file, which did not evidence complaint of Meniere’s disease in service, nor was there evidence of a claim for many years after service. He also indicated that he concurred with the findings of the 2020 VA examiner.

The examiner also concluded the Veteran’s Meniere’s disease is less likely than not caused by or a result of tinnitus. The examiner based his opinion on review of the records and the fact that he was unaware of any medical literature or supporting evidence that tinnitus would predispose the Veteran to develop Meniere’s.

In another addendum opinion dated in March 20201, the examiner indicated that although the Veteran’s was treated for the ear in service, there was no evidence of an ongoing ear condition nor complication of an ear condition following treatment in service, to include on separation examination in December 1965 nor within one year of military discharge that would provide evidence for a nexus for the Veteran’s Meniere’s disease.

In sum, the record reflects post-service diagnosis of Meniere’s disease, first noted in treatment records in 2019.

The Veteran had consistently reported symptoms of Meniere’s disease, and particularly tinnitus, in service. As a lay person, the Veteran is competent to report on that which he has personal knowledge, including symptoms such as ringing in his ears and dizziness, and the Board deems him credible in that regard. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). Accordingly, in-service incurrence is established.

The Board acknowledges that there are competing opinions of record as to whether the Veteran's Meniere’s disease had its onset in service. While private physician Dr. A. expressed that the disability had its onset in service, the 2020 and 2021 VA examiners found such a relationship less likely than not. 

It is the responsibility of the Board to assess the credibility and weight to be given the evidence. See Hayes v. Brown, 5 Vet. App. 60, 69-70 (1993) (citing Wood v. Derwinski, 1 Vet. App. 190, 192-93 (1992)). The probative value of medical evidence is based on the physician's knowledge and skill in analyzing the data, and the medical conclusion the physician reaches; as is true of any evidence, the credibility and weight to be attached to medical opinions are within the province of the Board. See Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993).

When reviewing such medical opinions, the Board may appropriately favor the opinion of one competent medical authority over another. See Owens v. Brown, 7 Vet. App. 429, 433 (1995). However, the Board may not reject medical opinions based on its own medical judgment. Obert v. Brown, 5 Vet. App. 30 (1993); see also Colvin v. Derwinski, 1 Vet. App. 171 (1991). In assessing medical opinions, the failure of the physician to provide a basis for his opinion goes to the weight or credibility of the evidence in the adjudication of the merits. See Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998). Other factors for assessing the probative value of a medical opinion are the physician's access to the claims file and the thoroughness and detail of the opinion. See Prejean v. West, 13 Vet. App. 444, 448-49 (2000). A medical opinion may not be discounted solely because the examiner did not review the claims file. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008).

In this case, while Dr. A. did not indicate review of the Veteran’s records, she did indicate review of pertinent medical literature and interview of the Veteran regarding his medical history, with medical reasoning provided in support of her conclusions. While the VA examiners reviewed the claims file and also provided support for the conclusions reached, the Board notes that the examiner discounted the Veteran’s medical history solely because of the lack of contemporaneous evidence. As noted above, the Board has found the Veteran’s report of onset of symptoms competent and credible.

For the foregoing reasons, the Board finds the medical opinions to be of relative equipoise regarding the onset of the Veteran's Meniere’s disease.

Resolving all reasonable doubt in favor of the Veteran, the Board concludes that Meniere’s disease had its onset in service. Accordingly, service connection for Meniere’s disease is warranted. 

 

A. S. CARACCIOLO

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board G. E. Wilkerson, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.