Citation Nr: 1546209 
Decision Date: 10/30/15 Archive Date: 11/10/15

DOCKET NO. 09-43 161 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Lincoln, Nebraska


THE ISSUES

1. Entitlement to service connection for sleep apnea, to include as secondary to service-connected posttraumatic stress disorder (PTSD).

2. Entitlement to service connection for a rash.

3. Entitlement to service connection for right ear hearing loss.

4. Entitlement to service connection for left ear hearing loss.


REPRESENTATION

Appellant represented by: Veterans of Foreign Wars of the United States


WITNESS AT HEARING ON APPEAL

Veteran 


ATTORNEY FOR THE BOARD

A. Odya-Weis, Associate Counsel


INTRODUCTION

The Veteran had active service from November 1986 to October 1991. 

This appeal is before the Board of Veterans' Appeals (Board) on appeal from a February 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Lincoln, Nebraska.

The Veteran testified before the undersigned Acting Veterans Law Judge at a videoconference hearing in April 2012. A transcript of that hearing is of record.

When these claims were last before the Board in January 2015, they were remanded for additional development and adjudicative action. 

The record before the Board consists solely of electronic records within Virtual VA and the Veterans Benefits Management System (VBMS). 

The issues of entitlement to service connection for a rash, right ear hearing loss, and left ear hearing loss are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The preponderance of the evidence weighs against a finding that the Veteran's obstructive sleep apnea is etiologically related to military service or is caused or permanently worsened by service-connected posttraumatic stress disorder (PTSD).



CONCLUSION OF LAW

The criteria for service connection for obstructive sleep apnea have not been met. 38 U.S.C.A. §§ 1110, 1131, 1154, (West 2014); 38 C.F.R. §§ 3.303, 3.304, 3.310 (2015).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duties to Notify and Assist

VA has a duty to provide the Veteran notification of the information and evidence necessary to substantiate the claim submitted, the division of responsibilities in obtaining evidence, and assistance in developing evidence, pursuant to the Veterans Claims Assistance Act of 2000 (VCAA). See 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). These notice requirements were accomplished in a letter sent in October 2008, prior to the initial rating decision. The letter also included notice of the type of evidence necessary to establish a disability rating or effective date for the issue under consideration, pursuant to the holding in Dingess/Hartman v. Nicholson, 19 Vet App 473 (2006). 

VA also has a duty to assist the Veteran in the development of a claim. This duty includes assisting the Veteran in the procurement of service treatment records, pertinent post-service treatment records, and providing an examination when necessary. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159 (2015). Here, the Veteran's service treatment records and post-service VA and private treatment records have been associated with the claims folder. The Board notes that pursuant to a prior Board remand, the Appeals Management Center (AMC) associated all available, outstanding VA treatment records with the Veteran's electronic files. As such, the Board finds that the AMC has substantially complied with the January 2015 remand orders and that no further action is necessary in this regard. See D'Aries v. Peake, 22 Vet. App. 97, 106 (2008); Dyment v. West, 13 Vet. App. 141, 146-47 (1999) (remand not required under Stegall, 11 Vet. App. 268 (1998), where the Board's remand instructions were substantially complied with), aff'd, Dyment v. Principi, 287 F.3d 1377 (2002). Additionally, the Veteran has not identified any other outstanding records that have not been requested or obtained. 

The Veteran was provided a VA examination in May 2014. The Board finds that the May 2014 VA examination report is adequate because the examiner based her conclusions on clinical evaluations, interview of the Veteran, and review of the Veteran's medical history. See Nieves-Rodriquez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). 

Moreover, with respect to the Veteran's April 2012 Board hearing, the Veteran, through his testimony, demonstrated that he had actual knowledge of the elements necessary to substantiate his claim and volunteered his treatment history. Additionally, neither the Veteran nor his representative has asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2) (2015), nor has he identified any prejudice in the conduct of the Board hearing. As such, the Board finds that no further action is necessary. See Bryant v. Shinseki, 23 Vet. App. 488 (2010) (requiring that the VLJ who chairs a hearing must comply with 38 C.F.R. § 3.103(c)(2) by fully explaining the issues and suggesting the submission of evidence that may have been overlooked). 

The Board thus finds that all necessary development has been accomplished and will proceed to the merits of the Veteran's appeal.

General Legal Criteria

Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131. 

Establishing service connection generally requires (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists and (2) that the current disability was either (a) proximately caused by or (b) proximately aggravated by a service-connected disability. 38 C.F.R. § 3.310, Allen v. Brown, 7 Vet. App. 439, 448 (1995) (en banc). Where a service-connected disability aggravates a nonservice-connected condition, a veteran may be compensated for the degree of disability (but only that degree) over and above the degree of disability existing prior to the aggravation. Allen, 7 Vet. App. at 448.

Analysis

The Veteran contends that he has a sleep disorder, diagnosed as obstructive sleep apnea, which is secondary to his service-connected posttraumatic stress disorder (PTSD).

The Veteran's service treatment records are silent for complaints or treatment of a sleep disorder. The Veteran opted to forego a separation examination in September 1991.

A July 2008 VA sleep study consultation found mild snoring and mild obstructive sleep apnea with a recommendation for further testing. In October 2008, a VA sleep study found no evidence of significant sleep apnea.

The Veteran was afforded a VA respiratory diseases examination in December 2008 and reported occasional night sweats and daytime hypersomnolence, but was found to have no evidence of airway obstruction.

In February 2009, the Veteran stated that his sleep was very erratic since active service and that he believed PTSD affected his sleep disorder by causing difficulty sleeping and nightmares.

At an April 2012 Board hearing, the Veteran testified that he had trouble sleeping at night and had nightmares ever since his service in the Persian Gulf. In connection with his testimony, he submitted Internet articles on sleep apnea and PTSD.

In a July 2012 VA treatment record, the Veteran was diagnosed with mild sleep apnea, with a noted history of sleep difficulty, and a notation that the Veteran believed his breathing problems were related to PTSD.

The Veteran was afforded another VA examination in May 2014. The examiner noted the Veteran had a 2008 diagnosis of obstructive sleep apnea and concluded that sleep apnea was less likely than not related to service and less likely than not caused or aggravated by PTSD. The examiner explained that the Veteran had no reported symptoms of sleep apnea in service and the symptoms he reported since service were not commonly associated with sleep apnea. The examiner reviewed medical literature that cited advancing age, male gender, obesity, and decreased size of airway as the most important risk factors for obstructive sleep apnea and noted that the Veteran gained about 40 pounds since active duty and had anatomic features that predisposed him to sleep apnea. The examiner further explained that peer-reviewed, widely-accepted medical literature noted in the opinion did not find PTSD to be a risk factor of obstructive sleep apnea or that PTSD aggravated sleep apnea. The examiner reviewed the Veteran's Internet articles and noted that one did not include citations or references to support a link between sleep apnea and PTSD, and the other, a 2010 abstract indicating apnea was elevated in veterans with PTSD, specifically noted that its data and conclusions were considered "preliminary until established in a peer-reviewed journal." The examiner concluded that neither of the articles submitted by the Veteran met the level of scientific scrutiny needed to establish credibility similar to the articles cited in the negative medical opinion.

In May 2015, the Veteran's wife reported that she was unable to sleep in the same bed as the Veteran because he would hit, punch, or kick her in his sleep.

Based on the above, the Board finds that the preponderance of the evidence is against a finding that the Veteran's obstructive sleep apnea is related to active service, to include as secondary to PTSD. 

In this regard, the Board finds the May 2014 VA examiner's opinion to be highly probative. The probative value of medical opinion evidence is based on the medical expert's personal examination of the patient, his knowledge and skill in analyzing the data, and his medical conclusion. As is true with any piece of evidence, the credibility and weight to be attached to these opinions are within the province of the adjudicator. Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993). Whether a physician provides a basis for his or her medical opinion goes to the weight or credibility of the evidence in the adjudication of the merits. See Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998). Other factors for assessing the probative value of a medical opinion are the physician's access to the claims folder and the thoroughness and detail of the opinion. See Prejean v. West, 13 Vet. App. 444, 448-49 (2000). Here, the May 2014 VA examiner is a VA staff physician assistant that possesses the necessary education, training, and expertise to provide the requested opinion. Additionally, the examination report reflects review of the Veteran's claims file, interview, and examination of the Veteran. It also provides a persuasive rationale. 

With regard to direct service connection, the Board notes that the Veteran contends he had difficulty sleeping ever since service due to erratic sleep schedules while serving in the Persian Gulf and nightmares. However, the Board finds that there is no probative evidence of record to support a finding that the Veteran's obstructive sleep apnea was present in service or is otherwise directly related to service. The May 2014 VA examiner opined that the Veteran's reported sleep disorder symptoms were not commonly associated with sleep apnea. 

With regard to secondary service connection, the Board concludes that the Veteran's sleep apnea was not caused or aggravated by service-connected PTSD. 
The Board reasoned that advancing age, male gender, obesity, and decreased size of airway were the most important risk factors for obstructive sleep apnea and noted that the Veteran had gained about 40 pounds since active duty and had anatomic features that predisposed him to sleep apnea. Further, the examiner properly supported her opinion that credible medical literature did not support a finding that PTSD caused or aggravated sleep apnea.

The Board acknowledges the Veteran's assertions that his sleep apnea is related to his PTSD. The Board notes that the Veteran and his wife are competent to report his symptoms of sleep disturbance. See Washington, 19 Vet. App. 362, 368 (2005). The Board also finds the Veteran credible in his reported symptoms. However, the Veteran and his wife are not competent to distinguish whether his symptoms are caused or aggravated by his service-connected PTSD. See Jandreau, 492 F. 3d 1372 (Fed. Cir. 2007). As such the Board assigns no probative weight to the Veteran's and Veteran's wife's assertions that his sleep apnea was caused or aggravated by PTSD.

As the preponderance of the evidence is against the Veteran's claim, the benefit-of-the-doubt doctrine is therefore not applicable, and the claim for service connection for obstructive sleep apnea, to include as secondary to service-connected PTSD, must be denied. See 38 U.S.C.A. § 5107(b); see also Gilbert v. Derwinski, 1 Vet. App. at 55-57.


ORDER

Entitlement to service connection for obstructive sleep apnea, to include as secondary to service-connected PTSD, is denied.


REMAND

The Board finds that further development is required before the claims of entitlement to service connection for a rash, right ear hearing loss, and left ear hearing loss are adjudicated. 

Rash

The Veteran contends that he has had a rash ever since service due to chemical exposure in the Persian Gulf.

The Veteran was afforded a VA examination in May 2014. The examiner noted skin diagnoses of irritant dermatitis of the right temple, tinea pedis, and tinea cruris, and concluded it was not due to or a result of the Veteran's active service. The examiner noted the Veteran had multiple other skin diagnoses that were not consistent with a "rash," and, therefore, not addressed. The examiner opined that it was less likely than not that the Veteran's skin rash was related to active service because there were no in-service complaints of chronic skin rash, a 1995 VA examination report by a dermatologist found no active rash, tinea cruris was not present at the examination due to the waxing and waning of the condition, and complaints of a rash were not noted until 2008. The examiner noted that the Veteran utilized protective clothing while employed as a welder before and after active service that allowed for easier development of tinea, tinea pedis and tinea cruris were caused by fungal organisms on the skin that thrived in moist, warm environments, and irritant dermatitis was not present until 2014 and was due to the Veteran's use of a welding helmet and baseball cap that retained perspiration and dust over the right temple. 

The Board notes that the examiner failed to address the Veteran's competent statements and testimony that he had skin problems, to include a rash, ever since his service in the Persian Gulf. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). As such, the Board finds that on remand the examiner should provide an opinion that accounts for all pertinent evidence of record.

Right and Left Ear Hearing Loss

The Veteran contends that his preexisting right ear hearing loss was aggravated by active service, and that he incurred left ear hearing loss as a result of noise exposure in service.

In May 2015, the Veteran submitted private hearing test results related to an occupational hearing conservation program dated from April 1979 to November 2014. In a July 2015 informal hearing presentation, the Veteran's representative waived the RO's consideration of the new evidence. Notably, the hearing test results dated March 1981, prior to entrance into active duty, compared to hearing test results dated October 1991, after separation from active service, indicate a worsening of the Veteran's hearing acuity in both ears.

The Board notes that a January 2015 Board remand directed the originating agency to obtain an additional opinion as to the etiology and nature of the Veteran's hearing loss if new evidence was received. See Stegall v. West, 11 Vet. App. 268, 271 (1998). As such, the claims must be remanded for an additional opinion on the nature and etiology of the Veteran's right and left hearing loss.

Accordingly, the case is REMANDED for the following actions:

1. Provide the Veteran the opportunity to identify any new medical evidence, from VA or otherwise, pertaining to any treatment the Veteran received for a rash, left ear hearing loss, and right ear hearing loss, that may have come into existence since May 2015, to specifically include all outstanding VA treatment records dated May 2015 to the present. The RO should secure any necessary authorizations. If any requested outstanding records cannot be obtained, the Veteran should be notified of such.

2. Following the completion of the above development, afford the Veteran an examination by an examiner with appropriate expertise to determine the nature and etiology of the Veteran's claimed skin rash disorders, to include the currently diagnosed irritant dermatitis of the right temple, tinea pedis, and tinea cruris. The examiner should review the electronic files, examine the Veteran, and perform any testing deemed necessary. 

The examiner should address the following: 

(a) Identify all current skin rash diagnoses.

(b) Is it at least as likely as not that any currently diagnosed skin rash 1)had its onset in service, or 2) within the one-year period following the Veteran's discharge from service; or, 3) was otherwise caused by any incident or event that occurred during service, to include chemical exposure in the Persian Gulf.

In providing these opinions, the examiner must comment on the Veteran's claim of skin rash symptoms since service. See Dalton v. Nicholson, 21 Vet. App. 23 (holding that an examination was inadequate where the examiner did not comment on the Veteran's report of in-service injury and instead relied on absence of evidence in the service treatment records to provide a negative opinion). 

The examiner is requested to provide a thorough rationale for any opinion provided. An examiner's report that he or she cannot provide an opinion without resort to speculation is inadequate unless the examiner provides a rationale for that statement.

3. Then, schedule the Veteran for an audiological examination to determine the nature and etiology of his right and left ear hearing loss. The Veteran's electronic files should be made available for review by the examiner in conjunction with the examination. The examiner should review the claims folder and this fact should be noted in the accompanying medical report. All appropriate testing should be conducted.

The examiner should solicit a complete history from the Veteran regarding right and left ear hearing loss, and comment as to the significance, if any, of the reported history, available lay statements, and the other medical evidence of record. 

The examiner is asked to opine whether it is at least as likely as not (i.e., a 50 percent or greater probability) that the Veteran's left ear hearing loss is related to the Veteran's active service or any incident of service, to include in-service noise exposure. 

The examiner should also opine as to whether it is clear and unmistakable (i.e., highest degree of medical certainty) that the Veteran's preexisting right ear hearing loss WAS NOT aggravated beyond the natural progress of the disorder by the Veteran's active service or any incident of service, to include in-service noise exposure. In other words, please determine whether it is clear and unmistakable that there was no increase in disability during service or that it is clear and unmistakable that any increase in disability was due to the natural progress of the preexisting condition. 

The term "as likely as not" does not mean merely within the realm of medical possibility, rather that the weight of medical evidence both for and against a conclusion is so evenly divided that it is as medically sound to find in favor of causation as it is to find against it. In comparison, "clear and unmistakable evidence" means "with a much higher certainty than 'at least as likely as not' or 'more likely than not.'" 

The examiner is requested to provide a thorough rationale for any opinion provided. An examiner's report that he or she cannot provide an opinion without resort to speculation is inadequate unless the examiner provides a rationale for that statement.

4. After the development requested above has been completed to the extent possible, the RO/AMC should readjudicate the Veteran's claims. If any benefit sought on appeal remains denied, the Veteran should be furnished a supplemental statement of the case and given the opportunity to respond.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
JENNIFER HWA
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs