Citation Nr: 1710392 
Decision Date: 03/31/17 Archive Date: 04/11/17

DOCKET NO. 11-18 291 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss.

2. Entitlement to service connection for tinnitus.

3. Entitlement to service connection for status post bilateral hip replacement. 

4. Entitlement to an initial rating in excess of 30 percent for posttraumatic stress disorder.


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

Devon Rembert-Carroll, Associate Counsel
INTRODUCTION

The Veteran served on active duty from October 1966 through October 1968.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from April 2009 and September 2009 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in St. Petersburg, Florida.

In a December 2013 decision, the Board remanded the appeal for further development. 

As will be discussed further below, in an October 2010 rating decision the RO denied entitlement to service connection for status post bilateral hip replacement. In November 2011 the Veteran filed a notice of disagreement. However, to date the Veteran has not been provided with a statement of the case in regards to this issue. 

The issues of entitlement to service connection for status post bilateral hip replacement and entitlement to an initial rating in excess of 30 percent for posttraumatic stress disorder are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDINGS OF FACT

1. The Veteran's bilateral hearing loss did not manifest during, or as a result of active military service. 

2. The Veteran's tinnitus did not manifest during, or as a result of active military service. 





CONCLUSIONS OF LAW

1. The criteria for service connection for bilateral hearing loss have not been met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.385 (2016).

2. The criteria for service connection for tinnitus have not been met. 38 U.S.C.A. §§ 1110, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

VA has a duty to provide the Veteran notification of the information and evidence necessary to substantiate the claim submitted, the division of responsibilities in obtaining evidence, and assistance in developing evidence, pursuant to the Veterans Claims Assistance Act of 2000 (VCAA). See 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2015). These notice requirements were accomplished by way of a letter sent in June 2009, prior to the initial rating decision. The letters also included notice of the type of evidence necessary to establish a disability rating or effective date for the issues under consideration, pursuant to the holding in Dingess/Hartman v. Nicholson, 19 Vet App 473 (2006).

VA also has a duty to assist the Veteran in the development of a claim. This duty includes assisting the Veteran in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159 (2016). Here, the Veteran's service treatment records, and post-service VA treatment records have been associated with the claims file. Although the Board remands for mental health treatment records from the Vet Center below, there is no indication that the Veteran was treated for bilateral hearing loss or tinnitus at a Vet Center. Instead, VA treatment records specifically note treatment at the Vet Center for PTSD. As such, the Board finds that a remand for Vet Center records in regards to entitlement to service connection for bilateral hearing loss and tinnitus would result in unnecessarily imposing additional burdens on VA with no benefit flowing to the Veteran and is not warranted. See Sabonis v. Brown, 6 Vet. App. 426, 430 (1994); Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991).

In regards to the Veteran's claim of service connection for bilateral hearing loss and tinnitus the Veteran was afforded a VA examination in August 2009 and VA addendum opinions in July 2014 and August 2014. The Board also obtained a Veterans Health Administration (VHA) medical opinion in April 2016. The Board finds that the April 2016 VHA opinion is adequate because the conclusions are based on review of the Veteran's medical history and relevant medical literature. See Nieves-Rodriquez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007).

The Board thus finds that all necessary development has been accomplished and appellate review may proceed. See Bernard v. Brown, 4 Vet. App. 384 (1993). 

Analysis

The Veteran contends that he has bilateral hearing loss and tinnitus that are related to in-service noise exposure. 

Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. §§ 1110, 1131. Establishing service connection requires (1) evidence of a current disability; (2) evidence of in-service incurrence or aggravation of a disease or injury; and (3) evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

Service connection may also be granted for chronic disabilities if such are shown to have been manifested to a compensable degree within one year after the Veteran was separated from service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. As an alternative to the nexus requirement, service connection for these chronic disabilities may also be established through a showing of continuity of symptomatology since service. 38 C.F.R. § 3.303(b). The option of establishing service connection through a demonstration of continuity of symptomatology rather than through a finding of nexus is specifically limited to the chronic disabilities listed in 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Audiometric testing measures hearing levels (in decibels) over a range of frequencies (in Hertz); the threshold for normal hearing is from 0 to 20 decibels, and higher threshold levels indicate some degree of hearing loss. See Hensley v. Brown, 5 Vet. App. 155, 157 (1993) (citing CURRENT MEDICAL DIAGNOSIS & TREATMENT 110-11 (Stephen A. Schoeder et al. eds., 1988)).

For the purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz is 40 decibels or greater; or when the auditory thresholds for at least three of the frequencies 500, 1000, 2000, 3000, or 4000 Hertz are 26 decibels or greater; or when speech recognition scores using the Maryland CNC Test are less than 94 percent. 38 C.F.R. § 3.385.

Prior to November 1, 1967, service department audiometric test results were reported in standards set forth by the American Standards Association (ASA). Since November 1, 1967, those standards have been set by the International Standards Organization (ISO)-American National Standards Institute (ANSI). Consequently, VA practice is to convert the ASA units to ISO or ANSI units.

Turning to the evidence of record, the Veteran has current diagnoses of bilateral hearing loss and tinnitus as evidenced by the August 2009 VA examination. The VA examiner diagnosed tinnitus. The Veteran's Maryland CNC test scores were 96 percent in the right ear and 88 percent in the left ear. The Veteran's pure tone thresholds as follows:





HERTZ

500
1000
2000
3000
4000
RIGHT
15 
10
20
45
25
LEFT
15
10
35
55
50

The Veteran's DD Form 214 shows that the Veteran's military occupational specialty was weapons infantry. As such, the Board finds that the Veteran's report of noise exposure is consistent with the place, type, and circumstances of his service. See 38 U.S.C.A. § 1154(a), (b). Therefore, the Veteran's claim turns on whether his currently diagnosed bilateral hearing loss and tinnitus are related to his military service. 

In this regards, the Veteran's September 1966 pre-induction report of medical history shows that the Veteran reported ear, nose or throat trouble in that he had a stuffy noise. The September 1966 pre-induction report of medical examination shows that the Veteran's ears and drums were noted as normal. The Veteran's pure tone thresholds (ISO or ANSI units after conversion are in parentheses) were as follows: 


HERTZ

500
1000
2000
3000
4000
RIGHT
0 (15)
0 (10)
0 (10)
0 (10)
0 (5)
LEFT
0 (15)
0 (10)
0 (10)
10 (20)
10 (15)

The Court has held that if the degree of hearing loss noted on an entrance examination does not meet VA's definition of a "disability" for hearing loss under 38 C.F.R. § 3.385, then that degree of hearing loss is not a "defect, infirmity, or disorder" under 38 U.S.C.A. § 1111; and, in such cases, the presumption of soundness will attach. See McKinney v. McDonald, 28 Vet. App. 15 (2016). 

The Veteran's service treatment records are absent of any complaints, treatment or diagnoses of bilateral hearing loss or tinnitus. The Veteran was treated for a rash and an upper respiratory infection. The Veteran's October 1968 separation report of medical history shows that the Veteran denied ear, nose or throat trouble, running ears and hearing loss. The Veteran did report mumps, hay fever, cramps in his legs, boils and back trouble. The October 1968 separation report of medical examination shows that the Veteran's ears and drums were noted as normal. The Veteran's pure tone thresholds were as follows: 


HERTZ

500
1000
2000
3000
4000
RIGHT
5 
0
5
X
5
LEFT
0
0
0
X
5

An October 2007 VA treatment record shows that the Veteran reported a gradual decline in his hearing over the last several years with the left ear worse. The Veteran reported a history of left ear intermittent tinnitus of about 5 years. 

The Veteran was afforded a VA examination in August 2009. The Veteran reported in-service noise exposure to rifle fire, helicopter engine noise, mortars and artillery. The Veteran reported that hearing protection was not used. The Veteran reported some noise exposure to small power tools in his civilian employment and to recreational hunting. The Veteran denied any history of ear infections, ear surgeries, dizziness, or balance problems. In regards to tinnitus, the Veteran reported that he was unsure of the onset and reported approximately a few years prior. He described the tinnitus as a high pitched buzzing sound. He reported that he has learned to ignore it and does not describe it as bothersome. 

In regards to hearing loss, the examiner concluded that the Veteran's claim file did not support the Veteran's claim of noise induced hearing loss due to service. The examiner explained that the Veteran's separation physical showed hearing was within normal limits from 500 to 4000Hz for both ears. The examiner noted that the audiological evaluation also revealed normal limits from 250 to 4000Hz with a moderate loss at 3000Hz in the right ear and within normal limits through 1500Hz then slopes from a mild to moderately severe hearing loss in the left ear. The examiner explained that in her opinion changes occurred after military service and were not related to military noise exposure. In regards to tinnitus, the examiner explained that individuals that are exposed to high levels of noise will typically report tinnitus. The examiner explained that the Veteran could not recall an exact date of onset and had a significant history of noise exposure with civilian employment. The examiner concluded that therefore it was not as least as likely as not that the tinnitus was due to military service but more than likely due to presbycusis and/or some other etiology. 

On his September 2009 notice of disagreement, the Veteran stated he did not recall having an audio examination at separation in 1968. The Veteran also reported that he found that the Institute of Medicine (IOM) conducted a study in 2005 in regards to Hearing Loss and Noise Exposure in Service. The Veteran stated that the study concluded that the Department of Defense (DOD) had not provided audio exams sufficient to assess noise-induced hearing loss. The Veteran also stated that the study noted that noise induced hearing loss was usually demonstrated when audiometric testing includes higher frequency levels than what DOD normally tests. 

In a June 2011 statement, the Veteran's representative argued that it was invalid to deny the claim based on no claim for hearing loss within one year of discharge since exposure to extreme noise at a young age can result in late onset hearing loss regardless of genetic or other factors. The representative also argued that it was not valid to deny the Veteran's claim based on no complaint or treatment during service since the Veteran would not necessarily have to have had actual hearing loss while in the service for him to have a current disability based on noise exposure. The representative cited to "Acceleration of Age-Related Hearing Loss by Early Noise Exposure Evidence of a Misspent Youth". The representative also argued that it was unlikely that the Veteran would have complained of hearing loss and tinnitus during service due to the circumstances of his service. The representative also asserted that the evidence of delayed onset hearing loss triggered the doctrine of reasonable doubt and the conclusions were against acceptable medical evidence and medical knowledge. 

In August 2011 and September 2011 statements, the representative submitted the following articles:

Sharon G. Kujawa and M Charles Liberman, "Acceleration of Age-Related Hearing Loss by Early Noise Exposure Evidence of a Misspent Youth"; The Journal of Neuroscience, February 15, 2008 26(7) 2115-2123. 

Gates GA, Schmid P, Kujawa SG, Nam B, D'Agostino R, [ABSTRACT] "Longitudinal threshold changes in older men with audiometric notches", Hearing Research 2000 Mar; 141(1-2):220-8. 

Birgit Mazurek, Heidi Olze, Heidemane Haupt, and Agnieszka J. Szczepek, "The More the Worse: the Grade of Noise Induced Hearing Loss Associates with the Severity of Tinnitus", International Journal of Environmental Research and Public Health, 2010, 7, 3071-3079. 

Kong 0, Schaette R Kempter, R Gross M, [ABSTRACT] "Course of hearing loss and occurrence of tinnitus", Hearing Research, 2006 Nov; 221 (1-2); 59-64. Epub 2006 Sep 7. 

The representative argued that in light of these articles the criteria of the regulations were shown to be inconsistent with prevailing medical knowledge of the subject. The representative argued that in relation to this instant case these articles show that an individual can experience significant hearing loss due to the exposure to traumatic noise many years after the exposure and not within one year as the current VA criteria require. 

In a July 2014 VA addendum opinion, the examiner concluded the Veteran's bilateral hearing loss and tinnitus were less likely than not caused by or a result of the Veteran's military service. The examiner explained that the Veteran's hearing was bilaterally within normal limits using calibrated audiometric during and/shortly following military service. The examiner noted that the Veteran's service treatment records were without evidence of any significant auditory threshold shifts or evidence of any acoustic trauma, such as additional examinations, "light duty" status, etc. The examiner also noted that the Veteran's service treatment records were without evidence of any constant pathologic tinnitus and were without a specific military service period nexus reported for impaired hearing and/or tinnitus. The examiner explained that noise induced hearing loss is typically immediate resulting in additional audiometric, ENT consultations, etc. The examiner explained that there was no evidence of this. The examiner noted that there was a history of occupational noise exposure which was the likely reason for the current levels of hearing loss and tinnitus bilaterally. 

The examiner also noted the Institute of Medicine, National Academy of Sciences, 2006 study "Noise and Military Service-Implications for Hearing Loss and Tinnitus". The examiner noted that the study concluded that based on current knowledge of cochlear physiology there was not sufficient evidence from longitudinal studies in laboratory animals or humans to determine whether permanent noise-induced hearing loss can develop much later in one's lifetime, long after the cessation of that noise exposure. The examiner noted that study concluded that although the definitive studies to address this issue have not been performed, based on the anatomical and physiological data available on the recovery process following noise exposure, it was unlikely that such delayed effects occur. The examiner also cited to "Test Re-test variability" which the examiner noted stated that "Considering the presently employed clinical test procedures, as was investigated in this study, an audiologist would have to see a change in audiometric test-retest threshold of approximately 10-15 dB to be 95% confident that the different did not occur as a result of variability due to measurement error. Consequently, a large change in hearing sensitivity must occur before it can be detected."

In an August 2014 VA addendum opinion the examiner restated the conclusions from the July 2014 addendum opinion. The examiner noted the medical articles regarding hearing loss submitted by the Veteran subsequent to the 2009 examination. The examiner stated that first; there was no evidence of hearing loss or tinnitus during this Veteran's military service bilaterally. The examiner stated that there was no evidence of cochlear damage bilaterally and in fact the hearing levels were remarkably normal eliminating any suspicion of noise-induced pathology for this examiner. The examiner explained that as a result of this there were no "noise notches," and there was no evidence of any cochlear damage at that time by examination, notation, consultation, survey or any other means. The examiner noted that the articles cited are either animal, mice, studies, which leave large practical and scientific gaps in this research's application to humans, or tutorial works that detail the pathophysiologic basis for the onset and progression of noise-induced hearing loss and tinnitus, which do not apply in this case because the Veteran's current loss of hearing and tinnitus had its onset well after this Veteran's military service. 

The examiner noted that during an October 2007 audiology consultation the Veteran reported tinnitus onset of about "5 years ago" or 2002, some thirty years following active military service. The examiner stated that it was also noted that the "patient reports a gradual decline in his hearing over the last several years with the left ear worse." The examiner noted that this again was some thirty years following active military service. The examiner noted that the onset of this disability was not during active military service bilaterally. The examiner explained that the referenced articles state time and time again that the onset of hearing loss and tinnitus is immediate or shortly following the offensive noise and cited to the IOM study. The examiner explained that there was no nexus between this Veteran's current mild bilateral high frequency sensorineural hearing loss and tinnitus. The examiner explained that this is early presbycusis, part of the natural aging process, perhaps secondary to recreational and/or social noise exposure events made worse by health maintenance concerns to include alcohol abuse that had an onset of likely the late 1990s and a progression to its current levels. The examiner then cited to http://www.hear-it.org/Alcoholcan- cause-hearing-loss. 

The examiner explained the medical basis for this conclusion or, "why normal audiological findings in service are/are not significant in determining whether current hearing loss disability is related to noise exposure during service" in this case sited below under "www.iom.edu" which is the best medical and scientific evidence that we have to date regarding this topic. The examiner again cited to "Noise and Military Service-Implications for Hearing Loss and Tinnitus" and its conclusions. The examiner noted the tinnitus time line and that the date and circumstances of tinnitus onset do or do not match the Veteran's military service period and circumstances of onset during military service. The examiner noted that other sources of tinnitus include: hearing loss, loud noise, medicine and countless natural foods and elements and other health problems such as additional allergies, tumors, problems in the heart and blood vessels, jaws, and dental work. The examiner cited to the National Institute on Deafness and other Communication Disorders. 

In an April 2016 VHA opinion, the examiner concluded that it was less likely than not that bilateral hearing loss and tinnitus are the result of in-service exposure to excessive noise. The examiner explained that the audiometric data at the time of the Veteran's separation examination in October 1968 indicates better or equal thresholds compared to the audiometric testing performed at induction in October 1966. The examiner explained that therefore, if the hearing is better or equal, not worse at the tested frequencies, the results do not meet the DoD criteria of a significant threshold shift (STS) as enumerated in the Handbook of Standard Procedures and Best Practices for Audiology Compensation and Pension Examination, 2004, which required a 15 dB threshold of 2, 3, and 4kHz. The examiner also noted that the October 1968 audiometric testing has missing data points for the 3000 Hz frequency for each ear. The examiner explained that given that the hearing thresholds for the bracketing frequencies of 2000 and 4000 Hz are the same or better for the 1968 audiogram compared to the 1966 audiogram, it would be exceedingly unlikely that the missing 3000 Hz thresholds would meet the criteria for a STS. 

In regards to the articles, the examiner explained that the Gates 2000 article opines that noise-damaged ears "age" differently than non-noise damaged ears. The examiner noted that in this study, it is accepted as a basis for this study that "noise damage is typically evidenced clinically by a discrete elevation (notch) of the auditory thresholds in the 3000 to 6000 Hz region of the audiogram and that "it is highly likely that all the ears with substantial (NIHL) noise induced hearing loss had deep notches." The examiner explained that the Veteran's post-service audiogram does not display the requisite notch or the requisite elevated hearing thresholds to even be considered as noise induced hearing loss. The examiner explained that in summarizing the Gates 2000 study and the Rosenhall 2003 study, the authors of the 2006 article entitled "Acceleration of Age-Related Hearing Loss by Early Noise exposure: evidence of a misspent youth" state that in the Gates 2000 study, the ears with the large 3000 to 6000 Hz reductions in threshold sensitivity, the notch, demonstrated "age noise interactions resulting in additional hearing loss progression primarily in frequency regions below the original noise induced shift. Similar changes with age were not seen in ears without these noise notches". The examiner explained that the articles saying that the presence of the threshold shift is important to identify the noise-damaged ear. The examiner noted that the Veteran does not have the requisite significant threshold shift to be considered damaged by noise. The examiner also noted that the Institute of Medicine Study did advocate that future audiometric testing include 6000 and 8000Hz. 

The examiner noted that regarding the issue of tinnitus, it has been assumed and practiced in the medical-legal assessment that noise induced tinnitus is the result of noise-induced hearing loss. The examiner explained that without noise induced hearing loss, there is not a valid case for noise induced tinnitus. The examiner cited to "Medical-Legal Evaluation of Hearing Loss, 2nd Edition", Robert A. Dobie, pg. 243. The examiner stated that he was unaware of compelling objective evidence in support of a contrary viewpoint. 

Based on the above, the Board finds that the evidence of record is against a finding of service connection. 

Based on the above, the Board finds that the most competent and credible evidence of record fails to demonstrate any direct link between the Veteran's bilateral hearing loss and tinnitus and his active military service. 

The Board acknowledges the Veteran's assertions that his bilateral hearing loss and tinnitus are due to his military service. He is competent to report on hearing difficulties and ringing in the ears. However, determining the precise etiology of the Veteran's hearing loss and tinnitus is not a simple question as there are conceivably multiple potential etiologies of the Veteran's hearing loss and tinnitus, particularly where the Veteran was not first cognizant of the problems until many years after service. Ascertaining the etiology of hearing loss and tinnitus involves considering multiple factors and knowledge of how those factors interact with the mechanics of human hearing. In this case, the facts are complex enough that the Veteran's intuition about the cause of his hearing loss and tinnitus is not sufficient to outweigh the opinion of the expert who carefully considered the specific facts of this case. See Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011) (Lance, J., concurring) ("The question of whether a particular medical issue is beyond the competence of a layperson-including both claimants and Board members-must be determined on a case-by-case basis.").

The Board finds the April 2016 VHA opinion to be highly persuasive to the issue at hand. The Board notes that the probative value of medical opinion evidence is based on the medical expert's personal examination of the patient, his knowledge and skill in analyzing the data, and his medical conclusion. As is true with any piece of evidence, the credibility and weight to be attached to these opinions are within the province of the adjudicator. Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993). Whether a physician provides a basis for his or her medical opinion goes to the weight or credibility of the evidence in the adjudication of the merits. See Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998). Other factors for assessing the probative value of a medical opinion are the physician's access to the claims folder and the thoroughness and detail of the opinion. See Nieves-Rodriguez, 22 Vet. App. 295 (2008); Prejean v. West, 13 Vet. App. 444, 448-9 (2000).

Here, the April 2016 VHA opinion was provided by a VA medical professional who possesses the necessary education, training, and expertise to provide the requested opinions. Additionally, the opinion is shown to have been based on a review of the Veteran's record and is accompanied by a sufficient explanation. The VA examiner also discussed the other pertinent medical evidence in reaching his conclusion. Furthermore, there is no contrary medical opinion of record. The Board thus finds that the April 2016 VHA opinion is dispositive of the nexus questions in this case.

The Board also acknowledges the articles that were submitted by the Veteran. The Board notes that the Court has held that a medical article or treatise "can provide important support when combined with an opinion of a medical professional" if the medical article or treatise evidence discusses generic relationships with a degree of certainty such that, under the facts of a specific case, there is at least "plausible causality" based upon objective facts rather than on an unsubstantiated lay medical opinion. Mattern v. West, 12 Vet. App. 222, 228 (1999). See also Sacks v. West, 11 Vet. App. 314 (1998); Wallin v. West, 11 Vet. App. 509 (1998). In short, articles and treatises tend to be general in nature and tend not to relate to the specific facts in a given veteran's claim. 

In the present case, the articles submitted by the Veteran fall into this general category. The Board notes that the articles provide that the etiology of bilateral hearing loss and tinnitus may include delayed onset bilateral hearing loss and tinnitus. However, the Board finds that the internet articles alone do not outweigh the more probative VHA medical opinion that provided reference to competing medical treatises and discussed why the articles provided by the Veteran do not support service connection based on the particular circumstances of this Veteran's case. 

The Board also acknowledges the Veteran's assertions that he was not provided with a separation examination. However, the Board finds the existence of the October 1968 separation report of medical examination in the Veteran's claims file to be the most probative in determining whether the Veteran underwent an examination at separation. 

The Board also acknowledges the representative's assertion about filing a claim within one year of service and the likelihood that the Veteran would have complained during service. First, the Board finds that the Veteran was not denied service connection solely based on the lack of evidence that bilateral hearing loss and tinnitus manifested to a compensable degree within a year from service. Instead, the VA simply concluded that the Veteran did not meet this particular criterion for service connection. Additionally, the Board finds the likelihood of whether the Veteran would have reported complaints during service is irrelevant in this case. The Veteran has provided onset dates for his bilateral hearing loss and tinnitus many years after service. Furthermore, he has not provided an in-service onset date to a VA examiner or to VA medical professionals during the course of treatment. The Board also acknowledges the assertion about the proper frequency testing that should be conducted by the DoD and the assertion that the criteria provided in VA regulations contradict medical knowledge. However, the Board finds that such determinations are outside of the purview of the Board's authority and the scope of this decision. The Board thus assigns no probative value to these assertions. 

In regards to presumptive service connection and continuity of symptoms, the Veteran does not contend and the evidence of record does not show that he has suffered from chronic symptoms in service and since service or that his bilateral hearing loss and tinnitus manifested to a compensable degree within a year of separation. 38 C.F.R. § 3.309 (a). Walker, 708 F.3d 1331. Instead, the Veteran has reported onset dates of approximately 30 years after his discharge from service. Indeed, this case is distinguishable from Reeves v. Shinseki, 682 F.3d 988 (Fed. Cir. 2012).

The Board thus finds that the weight of the evidence is against a finding of service connection. In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. 38 C.F.R. § 3.102 (2016); Gilbert v. Derwinski, 1 Vet. App. 49, 54-56 (1990).


ORDER

Entitlement to service connection for bilateral hearing loss is denied.

Entitlement to service connection for tinnitus is denied.


REMAND

PTSD

A February 2013 VA treatment record shows that the Veteran receives mental health treatment from the Vet Center. The Board notes that there are no Vet Center records associated with the Veteran's claims file. As such, the Board finds that a remand is necessary to obtain such records. 

Bilateral Hip Disability

As discussed above, in an October 2010 rating decision, the RO denied entitlement to service connection for status post bilateral hip replacement. In November 2011 the Veteran filed a notice of disagreement. However, to date the Veteran has not been provided with a statement of the case in regards to this issue. Therefore, a remand is necessary to provide the Veteran with such. See Manlincon v. West, 12 Vet .App. 238 (1999).

Accordingly, the case is REMANDED for the following action:

1. The Veteran should be furnished a statement of the case that addresses the denial of entitlement to service connection for status post bilateral hip replacement. The issue should only be returned to the Board if the Veteran files a timely Substantive Appeal.

2. Provide the Veteran another opportunity to identify any pertinent treatment records for his PTSD. The RO/AMC should secure any necessary authorizations. If any requested outstanding records cannot be obtained, the Veteran should be notified of such.

3. Obtain all available records from the Vet Center. 

4. Obtain VA treatment records dated September 2014 to the present. 

5. After completing the above, and any additional development deemed necessary, the issue should be readjudicated based on the entirety of the evidence. If the benefits sought on appeal remain denied, the Veteran and his representative should be issued a supplemental statement of the case. An appropriate period of time should be allowed for response.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 
(West 2014).



______________________________________________
TANYA SMITH
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs