Citation Nr: 1730437 
Decision Date: 07/31/17 Archive Date: 08/04/17

DOCKET NO. 13-17 739 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUE

Entitlement to service connection for an ear syndrome, to include Meniere's disease, or to include as secondary to the hearing loss and tinnitus disabilities.


REPRESENTATION

Appellant represented by: Tennessee Department of Veterans' Affairs


WITNESSES AT HEARING ON APPEAL

Appellant and his spouse


ATTORNEY FOR THE BOARD

E. Weston, Associate Counsel



INTRODUCTION

The Veteran had active duty service from December 1965 to October 1967.

This appeal comes before the Board of Veterans' Appeals (Board) from the December 2011 rating decision of the RO in Nashville, Tennessee.

In October 2015, the Veteran testified before the undersigned VLJ at a videoconference hearing, and a transcript of this hearing is of record.

In February 2016, the Board remanded the case on appeal to obtain a more probative medical opinion regarding the etiology of Meniere's disease. 


FINDING OF FACT

The evidence of record does not show that a current ear syndrome, to include Meniere's disease, is etiologically related to service; nor is it proximately due to, the result of, or aggravated by, the Veteran's other hearing disabilities.


CONCLUSION OF LAW

The criteria for service connection for an ear syndrome, to include Meniere's disease, and/or as secondary to the hearing loss and tinnitus disabilities, have not been met. 38 U.S.C.A. §§ 101, 1101, 1110, 1112(a)(1), 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.310 (2016).







REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. Duties to Notify and Assist

VA has certain notice and assistance obligations to claimants pursuant to the Veterans Claims Assistance Act of 2000 (VCAA), 38 U.S.C.A. §§ 5102, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.156(a), 3.326(a). VA provided the requisite notice to the Veteran in October 2015. (Virtual VA, Correspondence, 9/26/2008, pps. 1-3). See Pelegrini v. Principi, 18 Vet. App. 112, 120-21 (2004); Dingess v. Nicholson, 19 Vet. App. 473, 486 (2006); Barr v. Nicholson, 21 Vet. App. 303, 312 (2007).

VA also has a duty to assist the Veteran to obtain potentially relevant records, and to provide examinations or medical opinions when necessary to make a decision on the claim. Here, the Veteran's service treatment records, VA records, and private treatment records have been obtained and associated with the claims file. The Veteran received VA treatment, and VA examinations in 2011, 2013, and 2017 in connection with his claims; which, collectively, contain a description of the history of disabilities at issue; document and consider relevant medical facts and principles; and provide opinions regarding the Veteran's claimed conditions.

By including in the claims file any outstanding treatment and examination records, and by obtaining the medical opinion of a qualified expert, a highly experienced, board-certified otolaryngologist/ear, nose, and throat (ENT) surgeon, the Agency of Original Jurisdiction (AOJ) has substantially complied with the Board's 2016 Remand instructions. See D'Aries v. Peake, 22 Vet. App. 97, 104-106 (2008); Stegall v. West, 11 Vet. App. 268 (1998). Additional development is not warranted. 

Finally, the Veteran had a hearing before the Board. The presiding VLJ appropriately conducted the hearing by explaining the issue and noting possible sources of evidence the Veteran may have overlooked that may be advantageous to his position. Bryant v. Shinseki, 23 Vet. App. 488 (2010); 38 C.F.R. § 3.103(c)(2). Accordingly, VA has satisfied its duties to notify and assist, and there is no prejudice to the Veteran in adjudicating this appeal. See Soyini v. Derwinski, 1 Vet. App. 540, 546 (1991); Sabonis v. Brown, 6 Vet. App. 426, 430 (1994).


II. Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service.
38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). In order to prevail on the issue of service connection, generally, there must be (1) medical evidence of a current disability; (2) medical evidence, or in certain circumstances, lay evidence of an in-service occurrence or aggravation of a disease or injury; and (3) competent evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); Hickson v. West, 12 Vet App. 247, 253 (1999); Barr v. Nicholson, 21 Vet. App. 303, 306 (2007); Pond v. West, 12 Vet. App. 341, 346 (1999).

Service connection also may be established on a secondary basis for a disability that is shown to be proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310. Establishing service connection on a secondary basis requires evidence sufficient to show (1) that a current disability exists; and (2) that the current disability was either (a) caused by, or (b) aggravated by, a service-connected disability. Id.; Allen v. Brown, 7 Vet. App. 439 (1995) (en banc).

The probative value attributed to a medical opinion issued by either VA or private treatment providers to support service connection depends on factors such as thoroughness, degree of detail, and whether there was a complete review of the veteran's claims file. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000). The Board must consider whether the examining medical provider had a sufficiently clear and well-reasoned rationale, and a basis in supporting objective clinical data. See Bloom v. West, 12 Vet. App. 185, 187 (1999); Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998); see also Claiborne v. Nicholson, 19 Vet. App. 181, 186 (2005) (rejects medical opinions that do not indicate whether the physicians actually examined the veteran, do not provide the extent of the examination, and do not provide supporting clinical data). The Court has held that a bare conclusion, even when reached by a health care professional, is not probative without an accurate factual predicate in the record. Miller v. West, 11 Vet. App. 345, 348 (1998).

When all the evidence has been assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event; or whether there is a preponderance of the evidence against the claim, in which case, the claim is denied. 38 U.S.C.A. § 5107(b);
See Wise v. Shinseki, 26 Vet. App. 517, 531 (2014) ("By requiring only an 'approximate balance of positive and negative evidence' . . . the nation, 'in recognition of our debt to our veterans,' has 'taken upon itself the risk of error' in awarding . . . benefits.") (quoting Santosky v. Kramer, 455 U.S. 745, 755 (1982));
38 C.F.R. § 3.102.

The Veteran seeks service connection for an ear syndrome, to include his current Meniere's disease. The Veteran has asserted that he believes that all of his ear problems (hearing loss, tinnitus, and Meniere's disease) have been caused by excessive noise from artillery fire that he had regular exposure to during his military service. In the alternative, the Veteran argues that his well-documented tonsil problems during his years in service have caused his Meniere's disease and warrant service connection.

Service treatment records reflect that the Veteran had tonsillitis in 1965 and 1966, enlarged tonsils in 1967, and a physician scheduled him for a tonsillectomy due to "very bad tonsils." (STR - Medical, 4/30/14, p. 23). However, service treatment records do not reveal any signs or symptoms of an ear syndrome or Meniere's disease, and the Veteran certified that he had no change to his health upon separation. In fact, a clinician specifically described the Veteran as "normal, healthy" at his exit exam in October 1967. (STR - Medical, 4/30/14, p. 20).

On VA examination in July 2011, the examiner acknowledged the Veteran's diagnosis of Meniere's disease, in conjunction with his reported tinnitus in 1997. The examiner further confirmed that the Veteran's sensorineural hearing loss was more likely than not due to his noise exposure during military service without hearing protection. In the November 2011 VA examination report, the examiner acknowledged that the Veteran received treatment for Meniere's disease at two private hospitals and reaffirmed the diagnosis, along with mild to moderately severe sensory hearing loss in the left ear, moderately severe to profound sensory hearing loss in the right ear, and tinnitus. The examiner concluded, "I think there is a less than 50 percent chance that excessive noise caused his Meniere's disease. There are many causes of Meniere's disease but I don't know of any evidence that noise exposure is a cause of Meniere's disease."

On VA examination in August 2013, the examiner again confirmed that the Veteran had bilateral hearing loss that was at least as likely as not caused by or the result of excessive noise in military service. However, the examiner found that the Veteran's tinnitus in his right ear, as first reported in 1997 at the same time as the onset of his Meniere's disease, was less likely than not due to noise exposure in service. The examiner analyzed, "Given the veteran's initial report of tinnitus onset (1997, not during military service) and the likelihood that the tinnitus is related to the Meniere's disease diagnosis, it is my clinical opinion that the veteran's unilateral tinnitus (right ear) is less likely than not (less than 50% probability) that the tinnitus is caused by military noise exposure." The Veteran denied any excessive post-service occupational or recreational noise exposure.

In response to the 2016 Remand, VA procured a private otolaryngologist/ENT specialist to issue a specific medical opinion as to whether it is at least as likely as not that the Veteran's ear syndrome, to include Meniere's disease, was caused by tonsillar problems, including the tonsillitis episodes documented in his service treatment records. After review of the Veteran's file and the 2016 Remand instructions, the ENT specialist issued the following opinion in January 2017:

It is not likely that the veterans ear syndrome including Meniere's was caused by his tonsillar problems including tonsillitis which was documented on his service records. Tonsillitis in and of itself is not a known risk factor for Meniere's disease. Enlarged adenoids can obstruct the Eustachian tube outlets and results in middle ear infection but this occurs primarily in children. Meniere's disease is not completely understood that [sic] is thought to be related to hypertonic fluid within the labyrinth creating pressure. I am unaware of any relationship of tonsil disease to that of Meniere's disease.

Here, the medical opinion issued by the ENT holds considerable probative weight. The opinion was prepared upon consideration of review of the claims file and it offers the degree of detail necessary to make a determination. See Prejean v. West, 13 Vet. App. 444, 448-9 (2000). The opinion further provides a sufficiently clear rationale based on supporting clinical data, as documented in recent ear examinations and hearing tests on file. See Bloom v. West, 12 Vet. App. 185, 187 (1999); Hernandez-Toyens v. West, 11 Vet. App. 379, 382 (1998); see also Claiborne v. Nicholson, 19 Vet. App. 181, 186 (2005). In sum, the ENT opinion concisely explained that the Veteran's tonsil disease, as documented in service, is not a known risk factor for Meniere's disease.

It is worthy of note that the otolaryngologist/ENT specialist has attained more than 25 years of medical practice experience as a board-certified physician in that field. Although she acknowledged that Meniere's disease is not completely understood, she also firmly maintained that she knows of no relationship between tonsil disease and Meniere's disease, and declared that it is not likely that the Veteran's current ear syndrome, to include Meniere's disease, could be caused by tonsillar problems. Moreover, the record does not present any comparable probative evidence, such as another probative medical opinion, to either contradict this specialist's opinion or to confirm a nexus between the Veteran's Meniere's disease and service. See Shedden, 381 F.3d at 1167.

Lay persons may be competent and sufficiently credible to provide opinions on conditions with "unique and readily identifiable features"... [that are] "capable of lay observation." Barr, 21 Vet. App. at 309; Layno v. Brown, 6 Vet. App. 465, 469 (1994) ("Lay evidence...may provide sufficient support for a claim of service connection"); See Davidson v. Shinseki, 581 F.3d 1313, 1315 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F.3d 1372, 1376 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331, 1337 (Fed. Cir. 2006); 38 C.F.R. § 3.159 (a)(2). That said, lay persons are not competent to provide opinions on medical issues outside their common knowledge that require specialized education, training, or experience, including certain complex etiologies and diagnoses. See Jandreau, 492 F.3d at 1377 n.4 (for example, lay persons are not competent to diagnose complex cancers), Colantonio v. Shinseki, 606 F.3d 1378, 1382 (Fed. Cir. 2010) (recognizing that in some cases, lay testimony "falls short" in proving an issue that requires expert medical testimony).

In this case, for example, the Veteran offers into evidence several medical articles generally related to the subject area of hearing disorders and Meniere's disease, including a journal article from 1925 that suggests a causal relationship between tonsillar infection and Meniere's disease. (Correspondence, 10/13/2015, p. 9). However, this evidence contains outdated materia; do not appear to have been published in scholarly, peer-reviewed medical journals; and too attenuated in subject matter and specific applicability to the Veteran's particular medical circumstances to provide substantial probative value. Unlike the VA ENT, the Veteran is not qualified to issue a competent opinion about such a complex disease etiology as that exemplified by Meniere's disease. As a result, the Veteran's lay statements, articles, and beliefs regarding his complex ear syndrome and Meniere's disease are not adequate to support his claim or very probative in comparison to the opinions of specialized medical experts who examined his case. 

Furthermore, the weight of the probative medical evidence regarding Meniere's disease does not support secondary service connection. See 38 C.F.R. § 3.310. 
The 2011, 2013, and 2017 examiners reviewed the pertinent clinical evidence and applied their respective expertise to confirm that the Veteran's Meniere's disease has not been caused by his other service-connected ear disabilities. Thus, there is no medical evidence to show that an ear syndrome, to include Meniere's disease, has been caused by or aggravated by any other service-connected disability. 

Accordingly, both the medical and lay evidence on record weighs against a finding that the Veteran's current Meniere's disease began during service, is related to service, or is secondary to any other service-connected disability. The Board finds that the preponderance of the evidence weighs against the Veteran's claim of entitlement to either direct or secondary service connection for an ear syndrome, to include Meniere's disease. Therefore, the doctrine of reasonable doubt is not applicable, and the claim must be denied. 


ORDER

Service connection for an ear syndrome, to include Meniere's disease, or to include as secondary to the hearing loss and tinnitus disabilities, is denied.



______________________________________________
JONATHAN B. KRAMER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs